Derrick **WOODFORD**, Appellant
(Defendant Below),

v.

**STATE** of Indiana, Appellee
(Plaintiff Below).

No. 483S 151PS.

Supreme Court of Indiana.

Feb. 11, 1986.

Susan K. Carpenter, Public Defender, Novella L. Nedeff, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Following a jury trial, Defendant-Appellant Derrick Woodford (Woodford) was convicted of attempted rape, a class B felony, Ind.Code §§ 35–42–4–1, 35–41–5–1. He was sentenced to a term of twenty (20) years imprisonment.

This belated appeal raises the following five (5) issues:

1. Whether the trial court erred in instructing the jury concerning the culpability for attempted rape.

2. Whether Woodford is entitled to a new trial because of prosecutorial misstatement of law regarding the abandonment defense during closing argument.

3. Whether the trial court erred in not allowing a defense witness to testify, and in not allowing Woodford a continuance to find additional witnesses.

4. Whether the trial court erred in denying Woodford's motion *in limine.*

5. Whether the trial court erred in enforcing its order granting the State's motion *in limine* and thereby excluding evidence of the victim's prior conduct with persons other than Woodford.

We affirm.

The victim and Woodford lived in separate apartments located across the hall from each other. Also residing in the same apartment building was one Francis Williams, a female acquaintance of both the victim and Woodford. On the afternoon of May 16, 1979, the victim returned to her apartment building after work, and briefly visited the apartment of Francis Williams. Woodford was also present. Following a discussion in which Ms. Williams and the victim planned to go shopping after changing clothes, the victim went to her own apartment. A few minutes later, she answered a knock on the door, and allowed Woodford to enter. After talking with Woodford about her hometown, the victim borrowed $5.00 from Woodford. Then he approached the victim from behind, turned her around, and threw her on the couch. The victim testified that Woodford then "was kind of laying on top of me and trying to get inbetween my legs by trying to spread my legs apart and put his hand down there." The victim was trying to push off Woodford, asking him to please let her up. She was afraid that Woodford would hit her in the stomach. The victim was seven months pregnant at the time.

She was also fearful that he was trying to rape her. She testified that Woodford touched the outside of her clothing covering her genitals, but that he did not get inside her clothes. The victim testified that during this first encounter, Woodford "did not stop when I told him to," but she admitted that Woodford did stop on his own volition. The victim then asked Woodford to leave, but he closed the door, came to the victim, grabbed her, and threw her on the bed. She then laid on her side with her knees up, and Woodford laid on top of her with his hands between her legs, trying to spread them. He told her that she "would enjoy this." The victim was afraid, and struggled. Woodford restrained the victim's chin with his arm, and kissed her on her mouth and face. The struggle persisted until a knock on the door was heard. Woodford then jumped up and sat on the bed while the victim jumped off the bed, opened the door, and let in Ms. Williams.

## ISSUE I

■ Woodford contends that the trial court committed errors of Constitutional magnitude in instructing the jury concerning the culpability, or *mens rea,* required for attempted rape. We disagree.

The offense of rape is defined at Ind. Code § 35–42–4–1 which provides in pertinent part:

A person who *knowingly or intentionally* has sexual intercourse with a member of the opposite sex when . . .

(1) The other person is compelled by force or the imminent threat of force

. . .

commits rape[.] [Emphasis supplied.]

The prerequisite culpability is determined by Ind.Code § 35–41–2–2 which provides in pertinent part:

(a) A person engages in conduct intentionally if, when he engages in the conduct, it is his conscious objective to do so.

(b) A person engages in conduct knowingly if, when he engages in the conduct, he is aware of a high probability that he is doing so.

Ind.Code § 35–41–5–1 provides in pertinent part:

A person attempts to commit a crime when, *acting with the culpability required for commission of the crime,* he engages in conduct that constitutes a substantial step toward commission of the crime. (Emphasis supplied.)

Woodford cites certain language from our decision in *Zickefoose v. State* (1979), 270 Ind. 618, 388 N.E.2d 507, and *Smith v. State* (1984), Ind., 459 N.E.2d 355 to argue that "knowingly" is not sufficient culpability for an attempt crime, and a conviction for attempted rape can be sustained only if the State established that the defendant acted "intentionally." The *Zickefoose* decision, discussing the conduct which constitutes an attempt, stated that one necessary element was that "the defendant must have been acting with a specific intent to commit the crime," 388 N.E.2d at 510. However, the case did not involve distinguishing between the terms "knowingly" and "intentionally," and the phrase "specific intent" was used only to generally denote the required culpability. The prerequisite *mens rea* for the offense of rape is expressly defined at IC § 35–42–4–1 as either "knowingly" or "intentionally."

Appellant's reliance upon *Smith v. State* is also misplaced. In *Santana v. State* (1986), Ind., 486 N.E.2d 1010, this Court reviewed our decision in *Smith,* and expressly rejected the same argument now made by Woodford. *Santana* upheld an instruction which stated the necessary culpability for the offense of attempted murder to be either "knowingly or intentionally."

We note that our opinion in *Smith* and the dissenting opinion in *Santana* both expressed concern regarding the phraseology of culpability instructions in crimes of attempt. These concerns were avoided in the instant case by the following instruction:

The crime of Attempt is defined by statute as I have previously given you. To convict a defendant of Attempted Rape, the State must have proven each of the

following elements: that the defendant, one, knowingly or intentionally; two, employed force or the imminent threat of force to compel [the victim] to have sexual intercourse with him; three, that the conduct of the defendant was a substantial step towards the commission of the crime of Rape.

This clearly informed the jury that the prerequisite culpability applies to the crime attempted, not to the "substantial step" which constitutes the attempt. We find that the trial court's instruction was proper.

### ISSUE II

Woodford contends that during closing argument the prosecutor misstated the law regarding the defense of abandonment, and that a new trial is warranted.

During his closing portion of final argument, the prosecutor responded to the abandonment defense urged by final argument of Woodford's counsel. In so doing, the prosecutor stated:

I want to speak first to this question of abandonment, or this so-called defense of abandonment, which is a defense under the Penal Code, but frankly that absolutely loses me. In order to have, in this particular case, in order to have the defense of abandonment, we would have to have a situation where the defendant, as the law of abandonment is applied, or that defense is applied, intended to commit the crime. He has got to intend to commit the crime, before he can abandon that particular crime, *but abandonment has to occur before he takes a substantial step towards the completion of the crime.* I wholeheartedly agree that if we had this defendant on trial for Rape, abandonment would be an absolute defense to the crime of Rape. Perfect defense.

\*     \*     \*     \*     \*     \*

We don't have this defendant on trial for Rape. We didn't try him for Rape. So where does abandonment come in? How can you have abandonment if you've got the intent and you've got the

substantial step towards completion of the crime, you've got the Attempt at that point, and the crime of Attempt has already been committed. I agree wholeheartedly that [sic] abandoned the crime of Rape. No question about that. (Emphasis supplied.)

■ The defense of abandonment is expressly provided by Ind.Code § 35–41–3–10, to apply to the crime of attempt, as follows:

With respect to a charge under IC 35–41–2–4, IC 35–41–5–1 [defines the offense of attempt to commit a crime], or IC 35–41–5–2, it is a defense that the person who is engaged in the prohibited conduct voluntarily abandoned his effort to commit the underlying crime and voluntarily prevented its commission.

Under this statute, the abandonment defense can arise only when "the person is engaged in the prohibited conduct." Thus, to give effect to the defense of abandonment in crimes of attempt, the conduct constituting abandonment must occur after the commencement of the "substantial step" toward the commission of the underlying crime (here, rape).

This has the resulting effect of making it possible for a person to technically commit the elements of the crime of attempt as provided in IC 35–41–5–1, but nevertheless to still avail himself of the defense of abandonment under IC 35–41–3–10, if he carries his burden of proof regarding the statutory prerequisites:

(a) voluntarily abandons his effort to commit the underlying crime, and

(b) voluntarily prevents its commission.

To hold otherwise would be to ignore and defy the abandonment defense enacted by the legislature.

Immediately following the final arguments, the court instructed the jury regarding the defense of abandonment, as follows:

The defense of abandonment is defined by law as follows: With respect to a charge under 35–41–5–1, Attempt, it is a defense that the person who engaged in the prohibited conduct voluntarily aban-

doned his efforts to commit the underlying crime and voluntarily prevented its commission.

If you find the defendant voluntarily abandoned his effort to commit the crime of Rape and voluntarily prevented its commission, you may find the defendant not guilty.

▋ Woodford urges that the prosecutor's statements to the jury constituted misstatements which placed him in grave peril by reason of the probable persuasive effect of the alleged misconduct on the jury's decision, citing *Maldonado v. State* (1976), 265 Ind. 492, 498–99, 355 N.E.2d 843, 848. We disagree. When viewed as a whole, the prosecutor's remarks could not reasonably have been taken as an implication of special knowledge. The remarks were within the ambit of adversary advocacy in response to arguments made by defense counsel during his summation. *Merritte v. State* (1982), Ind., 438 N.E.2d 754; *Burris v. State* (1984), Ind., 465 N.E.2d 171. Furthermore, the effect of the subsequent proper instruction avoided the Defendant being placed in a position of grave peril. We further note that the trial court did instruct the jury that comments of counsel were not evidence, and that the court's final instructions constituted the law applicable to this case. *Bixler v. State* (1984), Ind., 471 N.E.2d 1093. We do not find reversible error on this issue.

### ISSUE III

Defendant also contends that the trial court erred in refusing to allow a witness to testify, and in denying Defendant's request for a continuance to procure additional witnesses.

During cross-examination, the victim was asked a series of questions regarding the number of times she had been present in Woodford's room. She testified that she was once in his room "when a friend of mine was over there," plus another occasion when she was locked out of her room, and went to his room alone, remaining approximately five minutes. At the commencement of Woodford's case-in-chief, his

counsel requested leave to present testimony from one Rose Marie Pulluaim, a previously undisclosed witness. The State objected, and moved for an order prohibiting the witness from testifying. In support of its motion, the State then conducted a voir dire examination of the witness out of the presence of the jury. Ms. Pulluaim testified that she was acquainted with the victim by reason of one occasion when Ms. Pulluaim was at Woodford's apartment. At that time, the victim came to the apartment, and was joined by other persons after about fifteen minutes. Ms. Pulluaim observed the victim present in Woodford's apartment for a total of approximately one hour.

▋ The trial court granted the State's objection and motion, and prohibited any testimony from Ms. Pulluaim on grounds of relevancy, materiality, and because the witness was not listed pursuant to the court's omnibus order. Woodford contends that the need for Ms. Pulluaim's testimony was in the nature of rebuttal credibility evidence, the need for which could not be determined until the victim testified.

During the State's voir dire of the witness, the defense was permitted to cross-examine her, so as to demonstrate whether the proposed testimony would be relevant and material as credibility evidence. Having reviewed Ms. Pulluaim's voir dire testimony, we find that it was not inconsistent with the prior testimony of the victim, and did not constitute relevant and material impeachment of the victim's prior testimony. The trial court thus did not commit reversible error by excluding the testimony.

▋ Upon the trial court's refusal to permit Ms. Pulluaim to testify, the defense requested a continuance in order to locate additional witnesses to testify for impeachment purposes that the victim had been in Woodford's room on occasions contrary to the victim's prior testimony. Woodford's counsel identified the two proposed witnesses, and informed the trial court that

the witnesses would testify that the victim was in Woodford's room "on several occasions."

■ Continuances to allow more time for preparation are not favored, and should be granted only with the showing of good cause and in furtherance of justice. *Rhinehardt v. State* (1985), Ind., 477 N.E.2d 89. Comparing the offer to prove with the victim's testimony, we find that the trial court did not abuse its discretion in denial of Woodford's motion for continuance.

### ISSUE IV

■ Woodford contends that the trial court erred by denying his motion *in limine*, which sought to prevent the State from impeaching his credibility with evidence of prior criminal convictions and arrests. We disagree. The trial court granted the Defendant's motion, but with the following qualification: "except as within the present statute (sic) of case law, which briefly stated is crimes involving moral turpitude, or prior deviate sexual conduct." Neither Woodford's motion *in limine* nor argument of counsel to the trial court identified the nature of the criminal convictions and arrests sought to be excluded. The trial court's ruling and explanation merely paraphrased and referred to the depraved sexual instinct rule which has been well established in prior decisions. *Brackens v. State* (1985), Ind., 480 N.E.2d 536; *McKim v. State* (1985), Ind., 476 N.E.2d 503; *Jarrett v. State* (1984), Ind., 465 N.E.2d 1097.

### ISSUE V

■ Appellant also urges that by granting the State's motion *in limine*, requesting exclusion of evidence pursuant to the "Rape Shield Act," Ind.Code § 35–1–32.5–1 (subsequently recodified at Ind.Code § 35–37–4–4), the defendant was denied his right to due process of law under the Sixth and Fourteenth Amendments to the United States Constitution and Art. I., § 12 of the Indiana Constitution.

At trial, defense counsel contended that the Rape Shield Act itself violates the right to confrontation assured by the Sixth Amendment to the United States Constitution. This issue has previously been addressed, and we have consistently upheld the statute, absent the showing of actual impingement on cross-examination. *Thomas v. State* (1984), Ind., 471 N.E.2d 677; *Kelly v. State* (1983), Ind., 452 N.E.2d 907; *Moore v. State* (1979), 271 Ind. 464, 393 N.E.2d 175; *Lagenour v. State* (1978), 268 Ind. 441, 376 N.E.2d 475. However, in *Lagenour,* we cautioned:

> The right to confront witnesses granted by the federal and state constitutional provisions relied upon includes the right of full, adequate and effective cross-examination; it is fundamental and essential to a fair trial. (Citations omitted.)

Cited therein with approval was our statement from *Sears v. State* (1972), 258 Ind. 561, 563, 282 N.E.2d 807, 808:

> The right to vigorous cross-examination is fundamental to our adversary process, and wide latitude is allowed both sides in a dispute to ask pointed and relevant questions on cross-examination in an attempt to undermine the opposition's case. Thus, any doubt as to the legitimacy of a question on cross-examination should be resolved in favor of the questioner.

Our decision in *Lagenour* approved the trial court's granting of a motion *in limine* prohibiting defendant from examining the prosecuting witness and other alleged victims of appellant's sexual assaults as to their prior sexual conduct, and explained:

> There is no suggestion made of the existence of any line of questioning related to any of the witnesses which could have been followed in the absence of the limitation. There is no suggestion made that any of the witnesses might have an attitude or inclination which could be the product of prior sexual conduct. Appellant's contention that he was deprived by the order and statute from effectively cross-examining the three witnesses cannot be sustained.... What we do re-

quire is the showing of an actual impingement upon cross-examination.

268 Ind. at 446, 376 N.E.2d at 479.

In *Thomas*, this Court affirmed a rape conviction where the trial court applied the Rape Shield Act to prevent the defendant from cross-examining the victim regarding sexual conduct with her boyfriend earlier in the day of the instant offense. He claimed that such evidence would be relevant to the case since medical evidence was presented to show the presence of semen in the victim's vagina. In *Thomas*, we acknowledged that there may have been some probative value to the proffered evidence, but concluded that the "slight probative value was clearly outweighed by the prejudicial nature of such evidence in embarrassing the victim and subjecting her to public denigration."

In the instant case, following presentation of the State's case-in-chief which included the testimony of the victim, defense counsel again objected to the court's limitations of evidence under the Rape Shield Act, and informed the court that the defense desired to present evidence that the victim was a prostitute, that she had been promiscuous, that enticement existed, and that her relationship with one other person would generally cast discredit upon her character. However, the trial court had permitted cross-examination of the victim regarding her past relationship with the Defendant. The defense did not suggest that the victim was engaged in prostitution at the time of the offense.

While a specific line of questioning may have been delineated, the proposed inquiry did not reasonably suggest that the victim's behavior at the time of the offense was a product of her prior sexual conduct. The trial court's application of the Rape Shield Act did not constitute an actual impingement upon cross-examination. Therefore, we find no error upon this issue.

Judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and SHEPARD, JJ., concur.