William C. BURNS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 84S00–9811–CR–734.

Supreme Court of Indiana.

Jan. 27, 2000.

Susan K. Carpenter, Public Defender of Indiana, J. Michael Sauer, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Rosemary L. Borek, Deputy At-

torney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

William Burns was convicted of felony murder and sentenced to fifty-five years imprisonment. In this direct appeal, Burns raises a single issue for review: whether the evidence was sufficient to convict him of felony murder based on the underlying felony of robbery. We affirm the trial court.

### Factual and Procedural Background

On December 11, 1997, Burns arranged through his friend Kenny Ingle to buy $500 worth of "crank"[1] from Robert Phillips. Burns examined the product at the home of Tammy Baggett in the presence of Shaun Seeley and Lester Hamilton. Hamilton and Seeley agreed with Burns that the crank was too powdery to be of the promised quality and that Burns had been "ripped off." Burns announced his intention to get his money back. Hamilton testified that Burns said something akin to, "[L]et's go over there and take that guy's shit," meaning "robbing him." Burns either asked for or was offered Seeley's gun and concealed the weapon in the back of his pants. He then asked Seeley and Hamilton to accompany him to Ingle's house and they agreed.

When Burns, Seeley, and Hamilton arrived, Phillips and Ingle were smoking marijuana on Ingle's waterbed, and Ingle's girlfriend and son were in the living room. Burns, followed by Seeley and Hamilton, entered the bedroom to confront Phillips. According to Ingle and Seeley, Burns, perhaps referring to the gun, said something like, "[L]ook at what I've got." Phillips then attempted to push Burns away from him, and Burns testified that he "stuck [the gun] between [Phillips'] eyes." The gun discharged seconds later, killing Phillips. Seeley testified that Burns then emptied Phillips' pockets of as much as $1800 in cash as well as crank, marijuana,

and a wallet. Burns testified that, "if anything," he intended to "hit [Phillips] with the gun" while the others "jumped on" Phillips.

Hamilton left the house after helping Burns and Seeley load Phillips' body into a car trunk. Seeley suggested they could dispose of the body near Seeley's grandmother's house. Burns and Seeley drove to the site where they unloaded Phillips' body, threw wood on top of it, and set the pile on fire. When the pile did not burn well, they secured oil from an all-night convenience store and poured it on the body. Burns threw the gun into a nearby pond. In the meantime, Ingle had left the house for Ingle's parents' home as soon as his girlfriend and their son could dress. His parents soon convinced Ingle to call the police. Burns and Seeley later returned briefly to Baggett's where they found Hamilton and were told that the police were looking for Burns, Seeley, and Hamilton. Burns, Seeley, and Hamilton then returned to the woods to bury the body. Hamilton stood watch while Burns and Seeley dismembered the remains, shoveled them into a duffle bag, and buried them in a shallow grave.

Seeley and Hamilton were apprehended early the next morning before they were able to leave town. Burns hid out for several weeks, then took a bus to Wyoming, but was ultimately convinced by his grandfather to return to Indiana and surrender to the authorities. Before he could complete the trip, he was arrested in Chicago and brought back to Indiana.

Burns first told police that Seeley had engaged in the drug transaction and killed Phillips, but, after being confronted with several conflicting statements, confessed to both the drug transaction and to killing

---

1. Crank is a methamphetamine that is used as a stimulant.

Phillips. Burns was charged with murder and felony murder, and was convicted of felony murder in a three-day jury trial in July of 1998.

### Sufficiency of the Evidence

Burns argues that the evidence was insufficient to establish beyond a reasonable doubt that he intended to rob Phillips, and that his conviction for felony murder must therefore be vacated.

■ Our standard for reviewing sufficiency of the evidence claims is well settled. We do not reweigh the evidence or judge the credibility of the witnesses, *Harrison v. State*, 707 N.E.2d 767, 788 (Ind. 1999), and it lies within the jury's exclusive province to weigh conflicting evidence, *Robinson v. State*, 699 N.E.2d 1146, 1148 (Ind.1998). We will affirm the trial court if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Bunch v. State*, 697 N.E.2d 1255, 1257 (Ind.1998).

Burns maintains that his purpose in going to Ingle's home was to return the drug to Phillips and recover his money, not to rob anyone. He contends he carried the gun at the urging of Seeley and because Phillips was physically larger than he was. Burns further maintains that he drew the gun only after Phillips "came at him." Although Burns concedes that he may have taken property from Phillips after the killing, Burns argues that the evidence that he did so cannot be used to support the conclusion that the killing took place in the course of a robbery.

■ Robbery is defined by statute as the knowing or intentional taking of property of another or in another's presence "by using or threatening the use of force on any person" or "by putting any person in fear." Ind.Code § 35–42–5–1 (1998).

Hamilton testified that Burns' stated goal was to "take the guy's shit," which he understood to mean "robbing" Phillips. Burns himself testified that he went to Ingle's house to get his money back. He also testified that he contemplated hitting Phillips with the gun over the head and that he enlisted the aid of Seeley and Hamilton to "jump on [Phillips]." Although the evidence is disputed as to whose idea it was for Burns to take the gun with him, Burns testified that he put the gun in the back of his pants where "he could easily reach it." Both Hamilton and Seeley testified that Burns said, "[L]ook what I've got," seconds before the gun discharged. From all of this, a reasonable jury could have concluded that, as Burns said these words, he drew the gun to force Phillips to give him $500 or more, or to kill Phillips to get the money.

■ Furthermore, the jury could have credited Seeley's testimony that Burns removed the contents of Phillips' pockets, and concluded from that testimony that Burns intended to rob Phillips from the outset. *See Mahone v. State*, 541 N.E.2d 278, 280 (Ind.1989) (intent to commit robbery may be inferred from theft that occurs after the killing if theft and killing are part of one continuous transaction).

■ Finally, the State argues that Burns cannot escape prosecution for felony murder on the underlying felony of robbery even if Burns was attempting only to recover his money. *See Sheckles v. State*, 501 N.E.2d 1053, 1054–55 (Ind.1986) (finding evidence sufficient to uphold felony murder conviction where defendant attempted to collect debt by force). The recovery of one's own property may raise issues, but they are not present here. Seeley testified that Burns emptied the entire contents of Phillips' pockets, which contained as much as $1800 in cash. Burns did more than merely rescind his $500 transaction with Phillips. The evi-

dence is sufficient to support the conviction for felony murder.[2]

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.

---

**2.** Alternatively, Burns argues that, at a minimum, his felony murder conviction should be reduced to the lesser included offense of reckless homicide. We need not address this argument because there was sufficient evidence to support the felony murder conviction. Moreover, this is a misstatement of law. Reckless homicide is not a lesser included offense of felony murder. *See Hopkins v. State,* 582 N.E.2d 345, 352 (Ind.1991).