**Thomas MUNFORD, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0907–CR–653.

Court of Appeals of Indiana.

March 10, 2010.

Timothy J. O'Connor, O'Connor & Auersch, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Arturo Rodriguez, II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Thomas Munford ("Munford") was convicted in Marion Superior Court of attempted theft. Munford appeals and presents four issues, which we consolidate and restate as: (1) whether the trial court's instruction regarding the defense of abandonment constituted fundamental error; and (2) whether the State presented sufficient evidence to disprove Munford's abandonment defense.

We affirm.

### Facts and Procedural History

On the morning of March 19, 2009, Munford went to the liquor section of the Marsh Supermarket in downtown Indianapolis. Munford took three bottles of liquor from the shelf, placed the bottles inside his coat, and walked to the front of the store. A cashier observed Munford on a surveillance camera and saw him take the bottles and place them in his coat. The cashier used the store intercom to page "Mr. Shultz" or "Mr. Walden," which is a code used to signal employees that there is a potential security issue near the front of the store. Robert Walden ("Walden"), who worked as the manager of the store's meat department and who had previously worked as head of store security,

went to the front office when he heard the page over the intercom. The cashier told Walden that she had seen Munford put bottles of liquor inside his coat and gave Walden a description of Munford.

Walden located Munford and saw him walk past the cash registers and enter the store restroom. Walden followed Munford into the restroom, where he saw Munford and several other individuals. While there, Walden saw Munford remove the bottles from his coat and place them on the restroom floor. As he did this, Walden heard Munford say to the others in the restroom, "They're on us, we need to get out of here." Tr. p. 65. Walden then left the restroom and waited for Munford.

When Munford exited the restroom, Walden told him that he was going to be detained. At Walden's request, Munford reluctantly showed Walden where he had put the liquor bottles. However, when Walden told Munford he needed to go to the store office, Munford attempted to flee out the front door. Walden soon apprehended Munford and detained him until the police arrived.

On March 25, 2009, the State charged Munford with Class D felony theft. The State later amended the charging information to add a count of Class D felony attempted theft and dismissed the theft charge prior to trial. The State also amended the charging information to allege that Munford was an habitual offender. At the conclusion of the jury trial held on May 27, 2009, the jury found Munford guilty of Class D felony attempted theft. Munford then admitted to being an habitual offender. On June 24, 2009, the trial court sentenced Munford to three years on the attempted theft conviction and enhanced this sentence by two years as a result of the habitual offender determination. Munford now appeals.

## I. Jury Instruction

Munford first claims that the trial court erred by instructing the jury with regard to the defense of abandonment as follows:

Abandonment is a legal defense with respect to a charge of aiding or inducing another to commit a crime, attempting to commit a crime, or conspiracy to commit a felony. A crime of attempt occurs when one having the state of mind required for a particular substantive offense, conducts himself so as to take a substantial step towards commission of that offense.

Abandonment that may relieve one of criminal responsibility exists where a criminal enterprise is cut short by a change of heart, desertion of criminal purpose, change of behavior, and rising revulsion for the harm intended. Abandonment must occur before the criminal act charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed.

As a defense, the State is required to disprove abandonment, though the State may rely on the evidence produced during its case in chief.

Appellant's App. p. 73.

■■■ We first note that Munford did not object to the trial court's instruction at trial. It is well settled that the failure to object to a jury instruction given by the trial court waives the issue for review. *Gamble v. State*, 831 N.E.2d 178, 185 (Ind. Ct.App.2005), *trans. denied.* Munford attempts to avoid waiver by claiming that the trial court's instruction constituted fundamental error. The fundamental error exception to the waiver rule is an extremely narrow one. *Glotzbach v. State*, 783 N.E.2d 1221, 1225–26 (Ind.Ct.App.2003). To rise to the level of fundamental error, the error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* Specifically, the error

must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process. *Id.* When we consider a claim of fundamental error with respect to jury instructions, we look to the jury instructions as a whole to determine if they were adequate. *Ringham v. State,* 768 N.E.2d 893, 898 (Ind.2002).

As we explained in *Murray v. State*:

The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. In reviewing a trial court's decision to give a tendered jury instruction, we consider (1) whether the instruction correctly states the law, (2) is supported by the evidence in the record, and (3) is not covered in substance by other instructions. The trial court has discretion in instructing the jury, and we will reverse only when the instructions amount to an abuse of discretion. To constitute an abuse of discretion, the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. We will consider jury instructions as a whole and in reference to each other, not in isolation.

798 N.E.2d 895, 899–900 (Ind.Ct.App.2003) (citations omitted).

Munford claims that the trial court's instruction regarding abandonment was improper in three respects: (1) it improperly stated that abandonment must be the product of a "rising revulsion for the harm intended," (2) it did not inform the jury

that the State must disprove the defense of abandonment beyond a reasonable doubt, and (3) the instruction improperly stated that abandonment must occur "before the criminal act charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed." We address each contention in turn.

### A. *"Rising Revulsion"*

■ Munford first claims that the trial court's abandonment instruction was fundamentally erroneous because it required him to show that his abandonment was the product of "rising revulsion for the harm intended." Appellant's App. p. 73. Munford claims that this portion of the instruction is an incorrect statement of the law.[1]

The defense of abandonment is set forth in Indiana Code section 35–41–3–10 (2004), which states, "With respect to a charge under IC 35–41–2–4 [aiding, inducing, or causing an offense], IC 35–41–5–1 [attempt], or IC 35–41–5–2 [conspiracy], it is a defense that the person who engaged in the prohibited conduct voluntarily abandoned his effort to commit the underlying crime and voluntarily prevented its commission." Because the abandonment statute makes no mention of "rising revulsion," Munford claims the trial court erred by including this language in its abandonment instruction. However, Munford admits that this language was used by our supreme court in explaining the abandonment defense in *Land v. State,* 470 N.E.2d 697 (Ind.1984).

In *Land,* the court held that the defendant was not entitled to have the jury

---

1. Munford also claims that the trial court's instruction improperly shifted the burden to him to prove that his abandonment was caused by a "rising revulsion." We disagree. The instruction does not state that Munford

had the burden of establishing this or any other aspect of the abandonment defense. To the contrary, the instruction clearly stated that the State had the burden of disproving Munford's claim of abandonment.

instructed regarding abandonment because his conduct "provide[d] no basis upon which to infer that kind of change of heart, desertion of criminal purpose, change of behavior, and *rising revulsion for the harm intended,* contemplated by the statute as relieving one of criminal responsibility." *Id.* at 700 (emphasis added). This language was repeated in *Pyle v. State,* 476 N.E.2d 124, 126 (Ind.1985) (citing *Land,* 470 N.E.2d at 700), where the court wrote, "[a]bandonment that can relieve one of criminal responsibility exists where a criminal enterprise is cut short by a change of heart, desertion of criminal purpose, change of behavior, and rising revulsion for the harm intended." And again in *Sheckles v. State,* 501 N.E.2d 1053, 1055 (Ind.1986) (quoting *Pyle,* 476 N.E.2d at 126), the court wrote, "[a]bandonment relieves an accused of criminal responsibility when 'a criminal enterprise is cut short by a change of heart, desertion of criminal purpose, change of behavior, and rising revulsion for the harm intended.'" *Accord Babin v. State,* 609 N.E.2d 3, 6 (Ind.Ct.App.1993), *trans. denied.* Thus, even though the "rising revulsion" language does not appear in the abandonment statute itself, it has been used repeatedly by our courts in describing the abandonment defense. We are therefore unwilling to say that the use of this language in an instruction is an incorrect statement of the law.

■ Munford notes, "[t]he mere fact that certain language or expression [is] used in the opinions of this Court to reach its final conclusion does not make it proper language for instructions to the jury." *Newbill v. State,* 884 N.E.2d 383, 393 (Ind. Ct.App.2008) (quoting *Ludy v. State,* 784 N.E.2d 459, 462 (Ind.2003)), *trans. denied.* There is no blanket prohibition against the use of appellate decision language in jury instructions. *Gravens v. State,* 836 N.E.2d

490, 494 (Ind.Ct.App.2005), *trans. denied.* We therefore conclude that the inclusion of the "rising revulsion" language in the trial court's abandonment instruction was not error, much less fundamental error.

### B. *Burden of Proof*

■ Munford next claims that the trial court's abandonment instruction constituted fundamental error because, though it did inform the jury that the State had the burden of disproving the abandonment defense, it failed to explain that the State had to disprove abandonment beyond a reasonable doubt. *See Smith v. State,* 636 N.E.2d 124, 127 (Ind.1994) (holding that the State need not disprove the defense of abandonment unless and until the evidence supports the defense, at which point the State must disprove the defense beyond a reasonable doubt).

We find *Ringham, supra,* to be dispositive of Munford's claim. In *Ringham,* the trial court instructed the jury regarding the mistake-of-fact defense, but the mistake-of-fact instruction did not itself explain that the State had the burden of disproving the defense beyond a reasonable doubt. 768 N.E.2d at 898. The defendant claimed this constituted fundamental error. Our supreme court disagreed, noting that the trial court separately instructed the jury on the elements of the crime, the State's burden of proving those elements beyond a reasonable doubt, the mistake-of-fact defense, and the general criminal law concept that the defendant did not have to explain or prove anything. *Id.* The supreme court therefore held that the trial court did not commit fundamental error in its instructions to the jury. *Id.* (citing *Harlan v. State,* 479 N.E.2d 569, 571 (Ind.1985) (where trial court refused to instruct jury that State had burden of disproving self-defense, but jury was instructed on State's burden to prove ele-

ments of the crime beyond a reasonable doubt and on the elements of self-defense, no separate instruction regarding burden of proof of self-defense was necessary)).

The same is true here. The trial court instructed the jury that the State had the burden of disproving the abandonment defense, and further instructed the jury that the State had the burden of proving that Munford was guilty beyond a reasonable doubt. Appellant's App. p. 61. The trial court also instructed the jury that Munford was presumed innocent, that the State must prove each element of the crime charged beyond a reasonable doubt, and that Munford was "not required to present any evidence to prove his innocence or to prove or explain anything." *Id.* at 60. The jury was also instructed that it was to consider all the instructions together. *Id.* at 70. Under these facts and circumstances, the fact that the trial court's abandonment instruction did not itself explain that the State had the burden of disproving abandonment beyond a reasonable doubt does not amount to fundamental error. *See Ringham,* 768 N.E.2d at 898; *Harlan,* 479 N.E.2d at 571.

### C. *When Must Abandonment Occur*

■ Munford next claims that the trial court's abandonment instruction was erroneous because it stated that "abandonment must occur *before* the criminal act charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed." Appellant's App. p. 73 (emphasis added). However, this portion of the instruction has support in case law. *See Pyle,* 476 N.E.2d at 126 ("Abandonment must occur before the criminal act charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed."); *Sheckles,* 501 N.E.2d at 1056 (noting that defendant who asserts abandonment defense "must have

renunciated the criminal plan prior to the completion of the crime or before it became inevitable.").

Munford nevertheless claims that the trial court's instruction is incorrect with regard to abandonment of the crime of attempt, citing *Woodford v. State,* 488 N.E.2d 1121 (Ind.1986). In *Woodford,* the prosecutor stated during closing arguments that "abandonment has to occur before [the defendant] takes a substantial step towards the completion of the crime." *Id.* at 1124. On appeal, the defendant claimed the prosecutor misstated the law. Our supreme court wrote:

Under th[e] [abandonment] statute, the abandonment defense can arise only when "the person is engaged in the prohibited conduct." Thus, *to give effect to the defense of abandonment in crimes of attempt, the conduct constituting abandonment must occur after the commencement of the 'substantial step' toward the commission of the underlying crime* (here, rape).

This has the resulting effect of making it possible for a person to technically commit the elements of the crime of attempt as provided in IC 35–41–5–1, but nevertheless to still avail himself of the defense of abandonment under IC 35–41–3–10, if he carries his burden of proof regarding the statutory prerequisites.... To hold otherwise would be to ignore and defy the abandonment defense enacted by the legislature.

*Id.* (emphasis added).

Munford argues that the trial court's instruction improperly told the jury that abandonment had to occur before the crime was complete. The State does not argue that the trial court's instruction is a correct statement of the law. We think the trial court's instruction is, at worst, an incomplete statement of the law. As explained in *Sheckles:*

One who asserts [an abandonment] defense must establish that he voluntarily abandoned his effort to commit the crime and voluntarily prevented commission of the crime. He must have renunciated the criminal plan prior to the completion of the crime or before it became inevitable. The accused must have actually engaged in the prohibited conduct, that is, taken a substantial step toward the attempted crime. *The conduct constituting abandonment must occur after commencement of the substantial step, but prior to completion of the attempted crime.*

501 N.E.2d at 1055 (emphasis added) (citations and footnote omitted).

█ In other words, abandonment must occur after the defendant has taken a substantial step toward the commission of the underlying crime, and thus, in the case of an attempted crime, after the inchoate crime of attempt has been committed, but before the completion of the underlying attempted crime. *Id.; see also Smith,* 636 N.E.2d at 127. Here, Munford could have abandoned his crime after he had taken a substantial step toward the commission of the theft, but before the underlying theft was completed or became inevitable.

Applying this law to our facts, we conclude that the trial court's abandonment instruction may have been an incomplete statement of the law, but it was not an incorrect statement of the law.[2] It correctly informed the jury that abandonment must occur prior to the completion of the crime or before it became inevitable, but failed to inform the jury that abandonment of an attempt may occur after commission

of the substantial step toward the underlying crime. Since the trial court's instruction was not an incorrect statement of the law, we cannot conclude that it constituted fundamental error.

Even if we agreed with Munford that the trial court's abandonment instruction misstated the law, we cannot say that this misstatement would constitute error so severe as to make a fair trial impossible. *See Glotzbach,* 783 N.E.2d at 1226. If the jury had been instructed that Munford could abandon his attempted crime after he had taken the substantial step towards committing the crime, the evidence, as explained in detail below, was overwhelming that Munford did not *voluntarily* abandon his crime and therefore could not avail himself of the abandonment defense. In other words, we conclude that the trial court's abandonment instruction, to the extent that it was erroneous, was harmless error and did not constitute fundamental error.

## II. Sufficiency of the Evidence

█ Munford's last claim is that the State failed to present sufficient evidence to disprove his defense of abandonment. *See Smith,* 636 N.E.2d at 127 (holding that the State bears burden of disproving the defense of abandonment beyond a reasonable doubt if the evidence supports the defense). In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge witness credibility. *Klaff v. State,* 884 N.E.2d 272, 274 (Ind.Ct.App.2008). We instead consider only the evidence which supports the con-

2. We also note that that one of the abandonment instructions tendered by Munford himself stated that "[a]ttempt to commit crime must be freely and voluntarily abandoned *before crime is completed ....*" Appellant's App. p. 49 (emphasis added). Thus, the error of which Munford now complains is akin to invited error and not grounds for reversal. *See Wright v. State,* 828 N.E.2d 904, 907 (Ind. 2005) (a party may not take advantage of an error that it commits, invites, or which is the natural consequence of its own neglect or misconduct).

viction, along with any reasonable inferences to be drawn therefrom. *Id.*

As noted above, Indiana Code section 35–41–3–10 provides that "[w]ith respect to a charge ... [of attempt] ... it is a defense that the person who engaged in the prohibited conduct voluntarily abandoned his effort to commit the underlying crime and voluntarily prevented its commission." Our supreme court has explained:

> Indiana Code § 35–41–3–10 makes abandonment a legal defense to several inchoate crimes including conspiracy and attempt. Where attempt is at issue, an accused will be relieved of criminal responsibility if, subsequent to taking a substantial step towards committing a crime but prior to its consummation, he voluntarily abandoned his efforts. *To be considered voluntary, the decision to abandon must originate with the accused and not be the product of extrinsic factors that increase the probability of detection or make more difficult the accomplishment of the criminal purpose.*

*Smith,* 636 N.E.2d at 127 (emphasis added) (citations omitted); *see also Gravens,* 836 N.E.2d at 497 ("abandonment is not voluntary if it is the result of unanticipated difficulties in carrying out the criminal plan.") (citation omitted).

Here, there was simply no evidence indicating that Munford's decision to abandon originated with him. Instead, the only evidence relating to possible abandonment was the testimony of store employee Walden, who witnessed Munford remove the liquor bottles from his coat and place them on the restroom floor. Walden testified that when Munford removed the bottles from his coat, he told the others in the restroom, "They're on us, we need to get out of here." Tr. p. 65. Thus, the jury could readily conclude that Munford's abandonment was anything but voluntary and was instead the product of extrinsic factors that increased the probability of detection and made it more difficult to accomplish the theft. *See Gravens,* 836 N.E.2d at 497 (sufficient evidence to disprove abandonment defense where the evidence indicated that defendant abandoned his planned bank robbery only after teller questioned him about contents of note demanding money). Under the facts and circumstances of the present case, it is questionable whether the evidence supported the defense of abandonment at all, but even if it did, the State presented sufficient evidence to disprove abandonment beyond a reasonable doubt.

### Conclusion

The trial court did not commit fundamental error in instructing the jury regarding the defense of abandonment, and the State presented sufficient evidence to disprove Munford's defense of abandonment beyond a reasonable doubt.

Affirmed.

BARNES, J., and BROWN, J., concur.