## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 12 2017, 9:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony S. Churchward
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Paul Weedmayer,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 12, 2017

Court of Appeals Case No.
02A03-1705-CR-983

Appeal from the Allen Superior Court

The Honorable John F. Surbeck, Judge

Trial Court Cause No.
02D04-1608-F3-52

**Altice, Judge.**

## Case Summary

[1] Paul Weedmayer appeals his conviction for Level 6 felony sexual battery. He contends that the trial court abused its discretion in instructing the jury.

[2] We affirm.

## Facts & Procedural History

[3] K.D., a twenty-four-year-old college student, met Weedmayer on March 12, 2016, at a local nightclub in Fort Wayne. They exchanged phone numbers and began texting each other the following day. K.D. invited Weedmayer to her house on the evening of March 15, 2016, where she introduced him to several friends. The two talked and got to know each other and eventually moved to K.D.'s bedroom. They kissed but K.D. indicated she was not ready for sex, so they both fell asleep. Weedmayer left in the morning, and K.D. went to work.

[4] Later that morning, K.D. began receiving text messages from Weedmayer in which he indicated that he loved her and wanted to see her again. This "freaked out" K.D., and she responded that she wanted to take it slow and start off as friends. *Transcript* at 35. Weedmayer agreed not to move too fast.

[5] On March 18, 2016, K.D. and Weedmayer communicated about him coming over. When Weedmayer arrived sometime before 3:00 a.m., K.D.'s friends had already left and her roommate was not home. K.D. hugged Weedmayer, and they went up to her bedroom. They kissed but then Weedmayer's kisses became aggressive. After she told him she did not want to have sex, he acknowledged her request but his kisses soon became even more aggressive. He

climbed on top of her and began touching her. K.D. tried to move her head back and forth, and she kept telling him no. Weedmayer pulled his shorts down, pushed K.D.'s shorts and underwear to the side, and began to penetrate her vagina with his penis. K.D. then gathered enough strength to push him off. After a few moments of silence, she told him to leave. Weedmayer protested, apologized, and tried to persuade K.D. to let him stay, but she demanded that he leave. When he finally left, K.D. locked the door and called a friend to come stay with her because she was scared.

[6] Weedmayer sent three text messages to K.D. immediately after leaving. He apologized, asked for forgiveness, and pleaded with her to answer. K.D. did not respond. Later that afternoon, he called repeatedly and sent her a message indicating that he was outside her house and wanted to talk. K.D. responded that she did not want to talk and told him to leave her alone. Weedmayer, however, continued to call and text. K.D. called the police that night and reported being raped. The following day, K.D. received more unwanted text messages from Weedmayer, which she ignored.

[7] The text messages stopped for a few days and then on March 24, 2016, Weedmayer reached out to K.D. again. She responded, "Leave me alone…You had sex with me when I said no!" *Exhibits* at 24. Weedmayer replied in part, "Why you let emotion play with your mind you gotta understand when I say forgive me I am so sorry for what I did to you I didn't mean to do it …" *Id*. at 25.

[8]　On August 31, 2016, the State filed a two-count information against Weedmayer, charging him with Level 3 felony rape and Level 6 felony sexual battery. At the jury trial on March 7, 2017, Weedmayer testified and refuted K.D.'s account of what happened. He claimed that they had only ever kissed and that on the morning in question, she was texting with another man in his presence, which made him angry. According to Weedmayer, he then called her a bitch and other names, which resulted in her kicking him out.

[9]　During closing argument, the defense acknowledged that K.D. and Weedmayer presented "diametrically opposed" stories and that the jury could not believe both of them. *Transcript* at 194. Ultimately, the jury rejected Weedmayer's version of events and determined that he sexually assaulted K.D. The jury found him guilty of Level 6 felony sexual battery but acquitted him of rape. Thereafter, on April 11, 2017, the trial court sentenced Weedmayer to 2 years and 183 days, with 183 days served in jail and the remainder suspended to probation.

### Discussion & Decision

[10]　Weedmayer contends that the trial court abused its discretion when instructing the jury. Specifically, he challenges the following final instruction:

> The force necessary to sustain a rape conviction need not be physical. It may be constructive or implied from the circumstances. The presence or absence of forceful compulsion is to be determined from the victim's perspective, not the assailant's. This is a subjective test that looks to the victim's

perception of the circumstances surrounding the incident in question.

*Appendix Vol. II* at 65. When objecting to this instruction below, Weedmayer argued that it was an appellate sufficiency standard, which minimized the State's burden, and that the degree of force was not at issue in this case.

[11] On appeal, Weedmayer reasserts his claim that the instruction inappropriately used an appellate standard of review. It is well established that the mere fact that certain language is used in appellate decisions does not make it proper language for instructions to the jury. *See e.g.*, *Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003); *Munford v. State*, 923 N.E.2d 11, 15 (Ind. Ct. App. 2010). There is, however, "no blanket prohibition against the use of appellate decision language in jury instructions." *Munford*, 923 N.E.2d at 15.

[12] Beyond stating that the language came from an appellate standard of review, Weedmayer makes little attempt to address the instruction's alleged failings. He baldly asserts that the instruction "creates a vision in the jury's mind that [he] has already been convicted". *Appellant's Brief* at 14. We find this assertion to be wholly without merit.

[13] Weedmayer also asserts that the instruction created a presumption that some amount of force was used and, therefore, the instruction did not accommodate his testimony that no *unwanted* sexual activity occurred. This argument is based on a distorted representation of Weedmayer's testimony. He testified that the alleged sexual activity did not occur, not that it occurred but was consensual

and without force. Moreover, we fail to see how the instruction created the presumption suggested by Weedmayer.

[14]    We have previously discouraged trial courts from using an instruction similar to this. In *Newbill v. State*, 884 N.E.2d 383, 393 (Ind. Ct. App. 2008), *trans. denied*, we explained:

> We tend to agree that the particular instruction, as given, may not properly reflect the perspective from which a *jury* should consider the evidence of forceful compulsion. Further, acknowledging the possible effect of such an instruction in the hypothetical Newbill presented, it appears to us that the "perspective" for a jury's consideration of the evidence of forceful compulsion in a rape trial might better be described as either the "objective perspective of the victim" or the "reasonable perspective of the victim." Therefore, we would discourage trial courts from using this language as an instruction in the future.

*Id*. (emphasis in original) (footnotes omitted). The *Newbill* court, however, found no abuse of discretion because when read as a whole, the instructions did not mislead the jury and properly informed the jury that it was to consider and judge all the testimony and evidence presented. *Id*. at 394 ("an abuse of [] discretion occurs when the instructions, as a whole, mislead the jury as to the law in the case").

[15]    Even if Weedmayer asserted the same challenge to the instruction as that addressed in *Newbill*, we would similarly find no abuse of discretion based on a consideration of the jury instructions as a whole. Here, the trial court directed the jury to consider all of the instructions together and determine the facts from

all of the evidence presented. The jurors were instructed that they were the exclusive judges of the evidence and the credibility of the witnesses. Moreover, in addition to instructing on the presumption of innocence, the court repeatedly instructed the jury regarding the State's burden to prove beyond a reasonable doubt each and every element of the charged crimes, which included the force element of the rape charge. Considering the instructions as a whole, we conclude that the trial court did not abuse its discretion in giving the challenged instruction.

[16] Judgment affirmed.

May, J. and Vaidik, C.J., concur.