William Ted PYLE, Appellant,

v.

STATE of Indiana, Appellee.

No. 683S214.

Supreme Court of Indiana.

April 12, 1985.

Donald C. Swanson, Jr., Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Robert K. Johnson, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a conviction of attempted murder, I.C. § 35–42–1–1 and 35–41–5–1, and from a conviction of con-

finement, a class B felony, I.C. § 35–42–3–3. The case was tried before a jury. Appellant received a forty-year sentence for attempted murder and a ten-year sentence, to run consecutively, for confinement. He also was convicted on a separate count of confinement and received a ten-year sentence which is to run concurrently to the sentence for attempted murder; however, he does not appeal this conviction and sentence.

Appellant raises four issues on appeal: (1) whether there was sufficient evidence to support the conviction of attempted murder; (2) whether the trial court erred in not finding that he abandoned the attempted murder as a matter of law; (3) whether there was sufficient evidence to support the conviction of confinement of Ms. Sowers; and (4) whether the trial court erred in sentencing him to a ten year consecutive term for the confinement of Ms. Sowers.

These are the facts that tend to support the determination of guilt. At 1:15 p.m. on October 7, 1981, appellant arrived at a residence occupied by Mary McCoy and Sally Sower. Ms. McCoy was his former girlfriend. After he was invited to enter, he pulled a gun on the women. He ordered Ms. McCoy to wrap and padlock chains around herself. Thereafter, he ordered Ms. McCoy to handcuff Ms. Sowers to a bannister. He then forced Ms. McCoy into his van and drove away with her. Ms. Sowers liberated herself fifteen minutes later and called the police. Meanwhile, appellant spent the next six hours driving to Defiance, Ohio and then back to Fort Wayne, Indiana. During the trip, he repeatedly told Ms. McCoy that if the police stopped the van he would empty six bullets into her head. Eventually, a police car signaled the van to stop. Consequently, appellant exclaimed "we're caught" and proceeded to pull over to the side of the road. Subsequently, he grabbed the gun, said "good bye Mary" and shot her in the chest. He then surrendered to the police.

I

Appellant argues that there was insufficient evidence to support his convic-

tion for attempted murder. Specifically, he contends that the evidence failed to show that he possessed the requisite intent. On review, this Court will not weigh the evidence nor judge the credibility of the witnesses. Rather, we will consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom which support the verdict. If there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt the judgment must be affirmed. *Reed v. State* (1979), 180 Ind.App. 5, 387 N.E.2d 82; see also *Henderson v. State* (1980), 273 Ind. 334, 403 N.E.2d 1088.

Furthermore, the intent to commit murder may be inferred from the intentional use of a deadly weapon in a manner likely to cause death. *Williams v. State* (1982), Ind., 433 N.E.2d 769; *Zickefoose v. State* (1979), 270 Ind. 618, 388 N.E.2d 507.

The evidence mentioned above overwhelmingly demonstrates that appellant possessed the requisite intent for attempted murder and is clearly sufficient to support his conviction.

## II

Appellant argues that the evidence was such that it established the defense of abandonment to the charge of attempted murder as a matter of law. He contends that it shows only that he abandoned the offense since he shot the victim once, inflicting a superficial wound, and then surrendered, while having the opportunity and means to shoot her five more times.

Abandonment is a legal defense with respect to a charge of aiding or inducing another to commit a crime, attempting to commit a crime, or conspiracy to commit a felony. I.C. § 35-41-3-10. A crime of attempt occurs when one having the state of mind required for a particular substantive offense, conducts himself so as to take a substantial step towards commission of that offense. I.C. § 35-41-5-1. Abandonment that can relieve one of criminal re-

sponsibility exists where a criminal enterprise is cut short by a change of heart, desertion of criminal purpose, change of behavior, and rising revulsion for the harm intended. *Land v. State* (1984), Ind., 470 N.E.2d 697. Abandonment must occur before the criminal act charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed. *Hedrick v. State* (1951), 229 Ind. 381, 98 N.E.2d 906. *Norton v. State* (1980), 273 Ind. 635, 408 N.E.2d 514. In the case at bar, the trial judge gave an abandonment instruction which placed the burden on the prosecution to prove no abandonment, and such defense was gone into thoroughly in the final summations of counsel. The jury heard testimony from the shooting victim McCoy that the bullet entered and exited her arm, and also entered and exited her chest, and that she had four wounds. She further testified that after being shot she fell forward headfirst onto the floor of the van with her arm over her head and that the blood from the wounds to her arm ran down over her face. Defense counsel's description of the wounds as superficial is not accurate. The jury also heard testimony that the shot was fired after appellant perceived the signal from the police to stop his vehicle, and that appellant jumped out of the van after stopping. Defense counsel's observation that appellant had the opportunity and means to empty the gun into his intended victim, must be tempered by the evidence that he was aware he was under observation and within some control of the officer at the time he fired the single shot. A rational trier of fact could reasonably infer from the evidence presented, beyond a reasonable doubt that appellant did not withdraw from his plan to shoot and kill his victim, but carried it out step by step to completion. The presence of the five remaining shells in his gun, could reasonably be viewed by the trier of fact as simply showing that he indulged a mistaken belief that the single shot would prove fatal, or that he perceived that more than a single shot would have subjected him to the retaliatory action of an armed officer. The rejection

of the abandonment defense by the jury was clearly warranted by the evidence.

### III

Appellant argues that there was insufficient evidence to support his conviction for confinement of Ms. Sowers. He contends that his conduct did not constitute confinement because she was handcuffed to a bannister in her own home.

Criminal confinement is defined by I.C. § 35–42–3–3 as follows:

(a) A person who knowingly or intentionally:

(1) confines another person without his consent;

(2) removes another person, by fraud, enticement, force, or threat of force, from one place to another; or

(3) removes another person, who is under eighteen (18) years of age, to a place outside Indiana when the removal violates a child custody order of a court;

commits criminal confinement, a Class D felony.

However, the offense is a Class C felony if the child is not his child, and a Class B felony if it is committed while armed with a deadly weapon or results in serious bodily injury to another person.

 The circumstances here fall under I.C. § 35–42–3–3(a)(1). This section of the statute does not provide exceptions that depend upon where the victim is confined. The fact that a person is confined in his own home or automobile does not provide a sufficient basis for a claim that the confinement is not criminal. The essence of the offense is the restriction of a person's freedom of movement and liberty against his will. The evidence most favorable to the state is clearly sufficient to support his conviction for confinement.

### IV

Appellant complains that the trial court erred in imposing a consecutive sentence for the confinement of Ms. Sowers.

 Although the trial court has the discretion to impose concurrent or consecutive sentences in certain cases, aggravating circumstances must be listed where consecutive sentences are imposed. The record must disclose what factors were considered by the trial court to be mitigating or aggravating circumstances, and the record must further show that the determination of the sentence was based upon a consideration of the facts of the specific crime and what relation the sentence bears to the objectives that will be served by a consecutive sentence. *Washington v. State* (1981), Ind., 422 N.E.2d 1218.

Here the aggravating circumstances were not listed.

The convictions are affirmed and this case is remanded for a sentencing hearing consistent with this opinion.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.