William L. BABIN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–9205–CR–146.

Court of Appeals of Indiana, Third District.

Feb. 22, 1993.

Rehearing Denied April 20, 1993.

Transfer Denied May 27, 1993.

---

**4**

Scott L. King, King & Meyer, P.C., Gary, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

HOFFMAN, Judge.

Appellant-defendant William L. Babin appeals his convictions for conspiracy to commit murder, a Class A felony, and child exploitation, a Class D felony.

The facts favorable to the judgment disclose that on May 18, 1990, the victim, appellant's 14-year-old adopted daughter, took some photographic slides to her school. Several of the slides showed the victim in various stages of undress, and when school authorities became aware of their existence, they contacted the police. The victim informed the police that appellant had started photographing her in late 1987 or early 1988, and appellant, a 9-year veteran of the Lake County Police Department, admitted to same in a statement to the police on May 18, 1990.

On February 12, 1991, Jonathon Hockenberry, an accused child molester, informed the police that appellant had paid him to give the victim a fatal overdose of drugs. Working with the police, Hockenberry arranged a meeting between appellant and Allan Strange, an undercover police officer posing as a contract killer, on February 20, 1991. During the meeting, appellant agreed to pay Strange $3,000.00 to kill the victim and gave him a wristwatch as partial payment. Appellant canceled the contract by phone on February 25, 1991, but told Strange he would receive $500.00 for his trouble. On April 19, 1991, the State filed an information charging appellant with child exploitation, child molesting, and conspiracy to commit murder.[1]

Appellant raises two issues for review:

(1) whether the evidence was sufficient to overcome appellant's abandonment defense to the conspiracy charge; and

(2) whether the evidence was sufficient to sustain appellant's conviction for child exploitation.

■ Appellant claims the evidence was insufficient to overcome his abandonment defense to the conspiracy charge. When reviewing a claim of insufficient evidence, this Court considers only the evidence favorable to the judgment and any reasonable inferences therefrom. If there was substantial evidence of probative value to support a finding of guilt beyond a reasonable doubt, this Court will affirm the conviction. *Peak v. State* (1988), Ind.App., 520 N.E.2d 465, 467.

---

**1.** Appellant was acquitted of the child molesting charge.

IND.CODE § 35–41–3–10 (1988 Ed.) defines the defense of abandonment as follows:

"With respect to a charge under IC 35–41–2–4, IC 35–41–5–1, or IC 35–41–5–2, it is a defense that the person who engaged in the prohibited conduct voluntarily abandoned his effort to commit the underlying crime and voluntarily prevented its commission."

"[T]he defense of abandonment is available only to the person who physically and mentally abandons the enterprise and when that decision comes from within and is not due to extraneous factors." *Peak* at 467–468. The defendant must have renounciated the criminal plan prior to the completion of the underlying crime or before it became inevitable. *Sheckles v. State* (1986), Ind., 501 N.E.2d 1053, 1055.

Jonathon Hockenberry testified for the State that appellant paid him to give the victim a fatal overdose of drugs. Hockenberry also testified that he arranged the meeting between appellant and Officer Strange during which appellant agreed to pay Strange $3,000.00 to kill the victim. Although Strange testified that appellant phoned him to cancel the contract, he also testified that appellant sounded rehearsed or "scripted" when he did so. Moreover, due to the fact that all of appellant's conversations with Hockenberry and Strange were recorded and played for the jury, the jury was able to hear appellant's voice and form its own opinion as to whether he had a change of heart. The jury also knew that appellant was an experienced police officer who had knowledge of police investigative techniques.

From this evidence, it was reasonable for the jury to infer that appellant's "repudiation" was due to a fear of discovery rather than a change of heart. As previously discussed, an abandonment that is the product of extrinsic factors is not voluntary.

Appellant also contends the evidence was insufficient to sustain his conviction for child exploitation. IND.CODE § 35–42–4–4(b) (1992 Supp.) defines the offense of child exploitation, in pertinent part, as follows:

"A person who knowingly or intentionally: (1) manages, produces, sponsors, presents, exhibits, photographs, films, or videotapes any performance or incident that includes sexual conduct by a child under sixteen (16) years of age; commits child exploitation, a Class D felony."

According to the statute, "sexual conduct" has the following meaning:

"sexual intercourse, deviate sexual conduct, exhibition of the uncovered genitals intended to satisfy or arouse the sexual desires of any person, sado-masochistic abuse, sexual intercourse or deviate sexual conduct with an animal, or any fondling or touching of a child by another person or of another person by a child intended to arouse or satisfy the sexual desires of either the child or the other person."

IND.CODE § 35–42–4–4(a). Specifically, appellant contends the State failed to prove that he took the photographs with the intent to satisfy or arouse his or the victim's sexual desires.

The photographs show the victim in various stages of undress including several completely nude poses. In some of the photographs, the victim is touching her genitals, and in others, honey is being poured on her breast. The victim also testified that appellant fondled her during some of the photography sessions. Although the jury returned a verdict of not guilty on the child molesting charge, the evidence was sufficient to sustain appellant's conviction for child exploitation. The judgment of the trial court is affirmed.

Affirmed.

MILLER, J., concurs in Result with Opinion, in which GARRARD, J., concurs.

MILLER, Judge, concurring in result.

I agree with the majority that the evidence was sufficient to support Babin's conviction for child exploitation. However, I write separately to clarify the majority's conclusion that there is sufficient evidence

in the Record to support the jury's rejection of Babin's defense of abandonment.[1]

Babin, age 32, and a nine year veteran of the Lake County Police Department, was arrested and charged with Child Exploitation, a class D felony.[2] The charges were later expanded to include Child Molesting, a class D felony,[3] and Conspiracy to Commit Murder, a class A felony.[4] Following a five day trial held in January, 1992, Babin was acquitted of the Child Molestation charge, but convicted by the jury of Child Exploitation and Conspiracy to Commit Murder. The trial court sentenced him to one and a half (1½) years for Child Exploitation and twenty (20) years for Conspiracy to Commit Murder, the sentences to run consecutively.

Additional facts most favorable to the judgment show that while awaiting trial, Babin met Jonathon Hockenberry, an accused child molester. Hockenberry lived with Babin for a period of time. In February, 1991, Hockenberry contacted the Munster Police and advised them that he had information pertaining to a possible conspiracy to murder two Munster Detectives and the victim in this case. Hockenberry told the police that Babin had given him money to buy drugs to kill N.B.. Hockenberry agreed to work with the police in exchange for consideration in his own charges. Hockenberry later introduced Babin to Indiana State Trooper Strange who was posing as a "for hire" killer.

As noted by the majority, during a February 20, 1991, meeting, Babin agreed to pay Strange $3000 to kill N.B. and gave Strange a wristwatch as a deposit. Three days later, Babin told Hockenberry to tell Strange to forget the whole thing. On February 25th, Babin again told Hockenberry that everything was off. Strange telephoned Babin that same day. Babin told Strange he did not want to "do this" and that he could "beat" N.B. in court.

Babin claims that the State failed to produce sufficient evidence to overcome his defense of abandonment, which is a statutory defense in Indiana. I.C. 35–41–3–10. Our supreme court has stated that "[a]bandonment relieves an accused of criminal responsibility when 'a criminal enterprise is cut short by a change of heart, desertion of criminal purpose, change of behavior, and rising revulsion for the harm intended.' " *Scheckles v. State* (1986), Ind., 501 N.E.2d 1053, 1055 *citing Pyle v. State* (1985), Ind., 476 N.E.2d 124, 126. The court further explained: "When the actor demonstrates renunciation of criminal purpose, criminal liability should not be imposed. *Id.* at 1055–1056. As the majority states, "[t]he defense of abandonment is available only to the person who *physically and mentally* abandons the enterprise and when that decision comes from within and is not due to extraneous[5] factors." *Peak v. State* (1988), Ind.App., 520 N.E.2d 465, 467 *citing Norton v. State* (1980), 273 Ind. 635, 408 N.E.2d 514, 536 (emphasis added).

In the instant case, the State's witnesses established that Babin had physically cancelled the conspiracy. This evidence did not establish his motive, which in this case, as in many abandonment cases, was subjective. Thus, this was not a clear cut case of extraneous factors causing a change of heart—as would occur when a bank robber has a "change of heart" after seeing ten police cars parked at his target bank. However, the Record in this case clearly contains sufficient evidence to support the jury's conclusion that Babin's abandonment was due to extraneous factors. That evidence appears in Babin's testimony during cross-examination. R. 1515–1518. When asked by the prosecutor: "You were afraid of being found out, somebody being wired?," Babin replied: "Not as much as you think." From this statement as well as the remainder of Babin's testimony, it is apparent that Babin, by expressing his fear that his phone and face to face conversations were being recorded, believed that

---

1. Ind.Code 35–41–3–10.

2. I.C. 35–42–4–4.

3. I.C. 35–42–4–3.

4. I.C. 35–41–5–2 and I.C. 35–42–1–1.

5. **Extraneous:** Existing or originating outside or beyond: external in origin: coming from outside. Webster's Third New International Dictionary (1976).

discovery and arrest might be imminent. Thus, the jury could have concluded that he changed his mind due to extraneous factors—instead of undergoing a change of heart.[6]

From Babin's testimony and from hearing the actual conversations between Babin, Hockenberry and Strange, the jury could reasonably believe that Babin's reason for withdrawing from the deal with Strange was due to extraneous factors— Babin feared his plot had been discovered and that his conversations were being taped—not because Babin had a change of heart.[7] As it turned out, Babin was correct—his conversations *were* being taped. Thus, it is clear to me that there was sufficient evidence to support the jury's finding that Babin's abandonment was due to extraneous factors—fear of being caught—and not because of a change of heart.

For the above reasons, I concur in the result reached by the majority.

---

6. Since there was evidence in point on this issue, I feel it is unnecessary to address the question of whether, without direct evidence of motive, a police officer, the jurors, the judge or anyone for that matter could infer a motive from listening to the audio demeanor of the defendant in cancelling the plan. Nor is it necessary to try to analyze what Babin might have meant when he stated he could win the case at trial.

7. At Babin's sentencing hearing, Babin's counsel asked the trial court to sit as a "13th" juror on the abandonment issue. The court denied Babin's Motion to Correct error stating "[a]nd I too believe that he [Babin] changed his mind after he realized that he had been discovered and for that reason the motion to correct error is denied." R. 1726–1727.