ATTORNEY FOR APPELLANT
Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Andrew A. Kobe
Michael Gene Worden
Deputy Attorneys General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED

Dec 19 2017, 1:27 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

No. 84S05-1712-CR-741

DESTIN JONES,

*Appellant (Defendant),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff).*

Appeal from the Vigo Superior Court 1, No. 84D01-1504-F3-863
The Honorable John T. Roach, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 84A05-1609-CR-2065

**December 19, 2017**

**Rush, Chief Justice**.

We cherish stories about changes of heart and abandoned criminal endeavors. Take Dr. Seuss's beloved children's tale about the Grinch, whose softened heart and renounced endeavor to steal Christmas ended the story with joyful celebration. This case, too, involves an individual going from house to house overnight, stealing property from sleeping inhabitants—as well as opportunities to abandon criminal efforts and escape liability.

But this story's ending gives no reason to celebrate.

Here, the defendant's night of criminality, which included a plot to rob a gas station, earned him a host of criminal charges. He contested two of them by claiming that he had abandoned his attempt and conspiracy to rob the station. But a jury disagreed. We hold that although abandonment is an available defense for both attempt and conspiracy charges, the evidence is sufficient to support the jury's verdicts. We therefore affirm the convictions.

**Facts and Procedural History**

One night in Terre Haute, Destin Jones went to several houses and stole various items from the sleeping residents. At about 2:00 a.m., Jones and his accomplice, Stoney Johnson, decided to rob a Speedway gas station. With dark hoods over their heads, masked faces, and what appeared to be guns in their hands, they walked toward the station from its rear.

But unlike the tranquil homes, the station was bustling with a stream of customers. Jones and Johnson lurked for a while on one side of the building, crouched behind a pair of large outdoor freezers. A few times they advanced toward the front entrance before again ducking out of view. Eventually they unmasked their faces, removed their hooded sweatshirts, and entered the store with empty hands—and with a different crime in mind. While customers preoccupied the store's cashier, Jones burglarized the back office and rummaged through the manager's safe. Jones and Johnson then left, retrieving their discarded attire from behind the freezers.

Police caught up with Jones and Johnson the next week at an apartment. There, police found clothes worn at the gas station, property stolen from the victimized homes, and several firearms. The State charged Jones with twenty-one offenses.

For his charges of attempted robbery of and conspiracy to rob the Speedway, Jones asserted an abandonment defense. Since some evidence supported Jones's assertion, the trial court properly instructed the jury on the defense. Ultimately, the jury returned guilty verdicts on nine offenses: six thefts, burglary of the Speedway back office, and attempted robbery of and conspiracy to rob the Speedway. The trial court merged the attempt and conspiracy convictions and sentenced Jones to an aggregate seventeen-year term—including twelve years for the merged attempt and conspiracy.

Jones appealed, challenging only the attempt and conspiracy convictions. The Court of Appeals affirmed the conspiracy conviction, reasoning that the abandonment defense was

unavailable for Jones's conspiracy charge. Jones v. State, 75 N.E.3d 1095, 1098–99 (Ind. Ct. App. 2017). But it vacated the attempt conviction, concluding that the State did not disprove the abandonment defense beyond a reasonable doubt. Id. at 1099–1100.

We now grant Jones's petition to transfer, vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

We first determine whether the abandonment defense applies to conspiracy charges. This is an issue of statutory construction, reviewed de novo. Day v. State, 57 N.E.3d 809, 811 (Ind. 2016). Our goal is to determine the legislature's intent, which we do by following the plain and ordinary meaning of the statute's unambiguous language. Suggs v. State, 51 N.E.3d 1190, 1193–94 (Ind. 2016).

We then review whether sufficient evidence supports Jones's convictions. See Buelna v. State, 20 N.E.3d 137, 141 (Ind. 2014). We consider only the probative evidence and reasonable inferences supporting the verdicts, without reweighing the evidence or assessing witness credibility. Id. Unless no reasonable factfinder could find the defendant guilty, we affirm. Id.

## Discussion and Decision

The parties agree that the abandonment defense is available for both attempt and conspiracy charges. They dispute, however, whether sufficient evidence supports the jury's rejection of that defense. We begin by explaining why and when the abandonment defense applies to conspiracy charges. Then, applying our deferential standard of review, we hold that the evidence was enough for the jury to reject Jones's abandonment defense.

## I. The Abandonment Defense Has Narrowed Over Time.

At common law, abandonment was a limited defense. It shielded a defendant from criminal liability for attempt, conspiracy, and aiding or abetting, but only if the defendant had abandoned both the "idea" and the "evil intention" of the crime. Hedrick v. State, 229 Ind. 381, 389, 98 N.E.2d 906, 910 (1951); Stephens v. State, 107 Ind. 185, 189, 8 N.E. 94, 95–96 (1886) (emphasis omitted). The abandonment had to be voluntary, come before the crime's completion, and show that the accused had "wholly and effectively detached himself from the criminal enterprise." Harrison v.

State, 269 Ind. 677, 687–88, 382 N.E.2d 920, 926–27 (1978) (citing Hedrick, 229 Ind. at 389, 98 N.E.2d at 910).

When codified in 1976 and amended in 1977, the defense narrowed even more. It now applies exclusively to three statutory offenses—attempt; conspiracy; and aiding, inducing, or causing an offense—and it shields only a defendant who "voluntarily abandoned his effort to commit the underlying crime and voluntarily prevented its commission." Ind. Code § 35-41-3-10 (2014).

## II. The Abandonment Defense Is Available for Both Attempt and Conspiracy Charges.

The State initially argued that abandonment is not an available defense for Jones's conspiracy charge, but at oral argument the State rightly conceded the opposite. The abandonment statute plainly provides that abandonment "is a defense" "[w]ith respect to" statutory charges of both attempt and conspiracy:

> With respect to a charge under IC 35-41-2-4 [aiding, inducing, or causing an offense], IC 35-41-5-1 [attempt], or IC 35-41-5-2 [conspiracy], it is a defense that the person who engaged in the prohibited conduct voluntarily abandoned his effort to commit the underlying crime and voluntarily prevented its commission.

I.C. § 35-41-3-10. Our prior cases have acknowledged this plain reading. See, e.g., Smith v. State, 636 N.E.2d 124, 127 (Ind. 1994) ("Indiana Code § 35-41-3-10 makes abandonment a legal defense to several inchoate crimes including conspiracy and attempt."); Sheckles v. State, 501 N.E.2d 1053, 1056 n.4 (Ind. 1986) ("Abandonment may be asserted as a defense only to attempt, conspiracy, and aiding, inducing or causing an offense." (citing Ind. Code § 35-41-3-10 (Burns 1979 Repl.))).

While we have recognized that abandonment is a defense to conspiracy, we have not explained *when* that abandonment must occur. For attempt charges, though, we have concluded that abandonment must occur after the defendant engaged in conduct constituting attempt but before the attempted crime is complete or inevitable. See, e.g., Sheckles, 501 N.E.2d at 1055–56. We based this conclusion on the relevant statutory text and the rationales for the abandonment defense. See id. at 1056; Woodford v. State, 488 N.E.2d 1121, 1124 (Ind. 1986). For the same reasons, we find that for conspiracies the abandonment defense similarly applies only after the conspiracy has formed but before the underlying crime is complete or inevitable.

4

A. *Abandonment Can Occur Only After the Defendant Engaged in the Prohibited Conduct of the Charged Offense.*

Logically, defenses—including abandonment—are unnecessary if no crime has been committed in the first place. See Sheckles, 501 N.E.2d at 1056; Norton v. State, 273 Ind. 635, 668–69, 408 N.E.2d 514, 536 (1980). If Jones had never attempted and conspired to rob the Speedway, for example, he would not need a defense. Accordingly, the abandonment statute applies only after the accused has "engaged in the prohibited conduct" of the charged offense. I.C. § 35-41-3-10; Woodford, 488 N.E.2d at 1124. Thus, a person can "commit the elements of the crime" of attempt or conspiracy, and "still avail himself of the defense of abandonment under IC 35-41-3-10." Woodford, 488 N.E.2d at 1124. Holding otherwise would "ignore and defy the abandonment defense enacted by the legislature." Id.

For attempt, a defendant has "engaged in the prohibited conduct" when, with the culpability required for commission of the attempted crime, he has taken a substantial step toward commission of the crime. See Ind. Code § 35-41-5-1(a) (2014); Woodford, 488 N.E.2d at 1124; Zickefoose v. State, 270 Ind. 618, 622, 388 N.E.2d 507, 510 (1979). And for conspiracy, a defendant has "engaged in the prohibited conduct" when, with intent to commit a felony, he agrees with another person to commit the felony, and either the defendant or a co-conspirator performs an overt act in furtherance of the agreement. See Ind. Code § 35-41-5-2 (2014); Erkins v. State, 13 N.E.3d 400, 407 (Ind. 2014).

Here, neither party disputes that Jones's purported abandonment occurred after he committed attempt and conspiracy. Jones asserts that he abandoned the crimes when he removed his hood, unmasked his face, and concealed any weapons. At that point, he had committed attempt by taking substantial steps toward robbing the station, with intent to rob it: he approached the gas station with Johnson; walked back and forth on the side of the building with his head covered, face masked, and an object resembling a firearm in his hand; and three times advanced toward the entrance before ducking out of view behind large freezers. These acts also show that Jones had committed conspiracy: he agreed with Johnson to rob the station and took multiple overt acts in furtherance of that agreement, with intent to commit robbery. So at the time of Jones's asserted abandonment, he had "engaged in the prohibited conduct" of both attempt and conspiracy. See I.C. § 35-41-3-10.

5

## B. *Abandonment Can Occur Only Before the Underlying Crime Is Complete or Inevitable.*

Abandonment must occur not only *after* the "prohibited conduct" of the charged offense, but also *before* the "underlying crime" has been committed or becomes inevitable. I.C. § 35-41-3-10; Sheckles, 501 N.E.2d at 1055–56. This requirement is clear from the statute's mandate that the defendant "prevented" commission of "the underlying crime," see I.C. § 35-41-3-10, since a crime that is complete or inevitable cannot be prevented. And "[o]bviously," one cannot abandon a crime after its completion. Barnes v. State, 269 Ind. 76, 83, 378 N.E.2d 839, 843 (1978).

Since the statute requires that abandonment occur after the "prohibited conduct" of the charged offense but before the "underlying crime," the underlying crime cannot be the same as the charged offense. For attempt, the "underlying crime" is the crime that is attempted. See, e.g., Smith, 636 N.E.2d at 127 (criminal deviate conduct); Sheckles, 501 N.E.2d at 1055 (robbery); Woodford, 488 N.E.2d at 1124–25 (rape). For conspiracy, the "underlying crime" is the offense the conspirators agreed to commit. See, e.g., Babin v. State, 609 N.E.2d 3, 4–5 (Ind. Ct. App. 1993) (murder), trans. denied. By abandoning the underlying crime before it occurs or becomes inevitable, the defendant detaches the charged offense from the crime it's "hitched" to. See Smith, 636 N.E.2d at 127 (recognizing attempt and conspiracy as "inchoate crimes"); Webster's Third New International Dictionary 1142 (unabridged ed. 2002) (defining "inchoate" and providing that the Latin *incohare* means "to begin" and literally, "to hitch up").

This temporal requirement furthers the abandonment defense's twin rationales: deterring criminal conduct and minimizing dangerousness. See Sheckles, 501 N.E.2d at 1056. Criminal conduct is deterred when people know they can avoid criminal liability by abandoning and preventing the underlying crime before its commission. Id. And a person tends to negate the dangerousness of engaging in an attempt or a conspiracy by abandoning and preventing the underlying crime before it is inevitable or complete. Id.; Norton, 273 Ind. at 669, 408 N.E.2d at 536.

Here, there is no dispute that Jones's asserted abandonment of both the attempt and the conspiracy occurred before the underlying crime of robbery was completed or became inevitable. When Jones and Johnson removed their hoods, unmasked their faces, and emptied their hands, they had not even entered the gas station.

6

Since Jones's asserted abandonment occurred after he had "engaged in the prohibited conduct" of attempt and conspiracy, but before the underlying robbery was completed or became inevitable, the defense of abandonment was available on his attempt and conspiracy charges. We now turn to whether sufficient evidence allowed the jury's determination that Jones did not abandon the attempt and conspiracy.

### III. Sufficient Evidence Allowed the Jury to Reject the Abandonment Defense.

Jones acknowledges on appeal that he attempted and conspired to rob the Speedway, but he argues that the State failed to disprove his asserted abandonment defense. When, as here, the defendant's abandonment defense has some support in the evidence, the State must disprove the defense beyond a reasonable doubt. See, e.g., Smith, 636 N.E.2d at 127. In addition to the temporal prerequisites already discussed, abandonment must be both voluntary and complete, and the defendant must successfully and voluntarily prevent commission of the underlying crime. See I.C. § 35-41-3-10; Smith, 636 N.E.2d at 127; Brownlow v. State, 272 Ind. 678, 680, 400 N.E.2d 1374, 1376 (1980); Barnes, 269 Ind. at 82–83, 378 N.E.2d at 843.

At trial, since all of the abandonment defense's elements are required for the defense to apply, the State need only disprove one element beyond a reasonable doubt. See Brownlow, 272 Ind. at 680, 400 N.E.2d at 1376. We will find sufficient evidence to disprove an abandonment defense if a jury could reasonably infer that at least one of the defense's elements was absent. See Smith, 636 N.E.2d at 127. Here, because we find sufficient evidence for a jury to find that Jones's abandonment was not voluntary—which alone defeats Jones's asserted defense—we need not evaluate whether the evidence was sufficient to disprove Jones's defense in other ways.

For abandonment to be voluntary, the decision to withdraw from the "effort to commit the underlying crime" must "originate with the accused." I.C. § 35-41-3-10; Smith, 636 N.E.2d at 127. That decision must "in no way be attributable" to "extrinsic factors that increase the probability of detection or make more difficult the accomplishment of the criminal purpose." Smith, 636 N.E.2d at 127; Barnes, 269 Ind. at 82–83, 378 N.E.2d at 843. In other words, abandonment is not voluntary unless the criminal effort was abandoned "under such circumstances as would show that there were no outside causes prompting the abandonment." Barnes, 269 Ind. at 82, 378 N.E.2d at 843; see also Norton, 273 Ind. at 668–69, 408 N.E.2d at 536.

7

The State can disprove voluntariness in several ways. It can show that the defendant unexpectedly encountered a person at the crime scene who made the crime harder to carry out. See, e.g., Pyle v. State, 476 N.E.2d 124, 126–27 (Ind. 1985); Estep v. State, 716 N.E.2d 986, 987 (Ind. Ct. App. 1999); Peak v. State, 520 N.E.2d 465, 468 (Ind. Ct. App. 1988). Or that a person or object the defendant *expected* to encounter posed an *unexpected* difficulty. This unexpected difficulty can be as blatant as a stubborn door that won't break open, see Peak, 520 N.E.2d at 468, or as subtle as a bank teller speaking in a voice slightly louder than normal, which "fluster[s]" the defendant, Gravens v. State, 836 N.E.2d 490, 497 (Ind. Ct. App. 2005), trans. denied.

Even if the evidence doesn't show an additional obstacle to the criminal endeavor, there is sufficient evidence to disprove voluntariness if the jury could infer that the defendant's abandonment was "due to a fear of discovery" or apprehension, Babin, 609 N.E.2d at 5, rather than wholly attributable to a "rising revulsion for the harm intended" or a "change of heart" that "originate[d] with the accused," Smith, 636 N.E.2d at 127; Land v. State, 470 N.E.2d 697, 700 (Ind. 1984). This was the case, for example, when the defendant in Babin called off the conspired crime over the phone, but the officer on the other end of the call testified that the defendant sounded "scripted" or "rehearsed." Babin, 609 N.E.2d at 5; see also Smith, 636 N.E.2d at 125, 127 (finding sufficient evidence to disprove voluntariness when the jury could infer from a tree branch snapping that the defendant abandoned his attack due to fear of a victim's escape); Munford v. State, 923 N.E.2d 11, 18 (Ind. Ct. App. 2010) (finding sufficient evidence to disprove voluntariness when the defendant told accomplices, "They're on us, we need to get out of here.").

Here, the jury could have inferred that Jones's abandonment was not voluntary because it was at least partially attributable to extrinsic factors. The evidence showed that Jones preferred to commit crimes with a minimal likelihood of detection. All six of Jones's overnight thefts, for example, took place while the victims were sleeping.

Unlike those homes, the Speedway presented an obvious danger of detection. When Jones and Johnson arrived, the store was particularly busy, especially for a weekday at about 2:00 a.m. Customers streamed in to purchase snacks and lottery tickets as cars came and went in the front lot. Jones and Johnson did not empty their hands and cast aside their hooded sweatshirts and masks until after they approached the front entrance, where—the jury could infer—they saw how busy the store was and so altered their criminal plan from brash robbery to stealthy burglary.

8

The evidence thus supports two reasonable inferences: (1) that it was the unanticipated steady stream of customers—and not a change of heart—that deterred Jones from carrying out the robbery as planned, or (2) that Jones had anticipated the busyness of the store, but realized upon seeing the parade of patrons that his detection and apprehension were more likely than he had originally appreciated. Either permissible inference is enough to support a jury finding that Jones's abandonment was not voluntary, which defeats his abandonment defense.

Because sufficient evidence supports the jury's finding that the State disproved Jones's abandonment defense in at least one way, we affirm Jones's convictions.

### Conclusion

This case unfortunately does not show "a change of heart" or a "desertion of criminal purpose" coming "from within." Pyle, 476 N.E.2d at 126; Norton, 273 Ind. at 668, 408 N.E.2d at 536. So while the abandonment defense was legally available on Jones's attempt and conspiracy charges, the evidence supports at least one finding invalidating that asserted defense. We thus affirm his convictions.

David, Massa, Slaughter, and Goff, JJ., concur.