## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 24 2018, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce N. Munson
Law Office of Bruce N. Munson, P.C.
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Deshaun W. Jackson,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

July 24, 2018

Court of Appeals Case No.
18A02-1710-CR-2289

Appeal from the Delaware Circuit Court

The Honorable Kimberly S. Dowling, Judge

Trial Court Cause No.
18C02-1611-F2-19

**Brown, Judge.**

[1] Deshaun Jackson appeals his convictions for attempted burglary and conspiracy to commit burglary. Jackson raises two issues on appeal which we revise and restate as:

I. Whether the trial court abused its discretion in admitting certain testimony; and

II. Whether there is sufficient evidence to sustain his convictions.

We affirm.

### Facts and Procedural History

[2] At approximately 8:00 or 9:00 a.m. on June 17, 2016, Marilyn Wilson was asleep in her room, woke up to hearing her nineteen-year-old son Arthur calling in distress for her, and heard "thumping" coming from the kitchen or back area of the house. Transcript Volume II at 100. She turned to her five-year-old child who was in the room with her and told him not to leave the room, and at that time she heard a "loud pop" in the back area. *Id*. at 102. She exited her room and observed Arthur "coming out of the kitchen like low crawling." *Id*. Wilson went toward the kitchen and observed that a table had been moved, a plant had been knocked over, a window and screen were up, and the blinds were blowing. She thought she saw someone but was not sure.

[3] Wilson observed Arthur at the front door and then move to the bathroom. She observed that Arthur was "very upset," was on his knees throwing up in the toilet, was spitting and gasping, and had "a circle mark in his hand with blood." *Id*. at 104. She asked him what had happened, and he said that he had seen a

light under the door to the backroom and "opened the door and Fat Daddy and Little Brian was in the backroom,"[1] that Little Brian had an assault rifle, and that, when Arthur tried to shut the door, Fat Daddy stuck his foot in the door, pulled a gun from his waistband, and grabbed Arthur by his dreads. *Id*. at 106. Arthur also told Wilson that he and Jackson had "wrestled with the gun," that Arthur "got it away from him," that Arthur fired the gun, and the bullet struck Goodson. *Id*. at 107. Law enforcement arrived at Wilson's house, and Wilson subsequently provided a statement to police. Brian Goodson later reported to the emergency room with a gunshot wound to his upper leg.

[4] On November 15, 2016, the State charged Jackson with: Count I, conspiracy to commit burglary as a level 2 felony; and Count II, attempted burglary as a level 2 felony. At Jackson's jury trial, the following testimony was elicited from Wilson:

> Q. Okay. And Arthur went to the bathroom. Can you describe his demeanor?
>
> A. He was upset.
>
> Q. And why do you say that?
>
> A. He was kneeled down on his knees at the toilet. He was throwing up in the toilet. He was spitting and gasping. I was pulling his dreads out of his face, asking him, what, what just happened.

---

[1] Wilson testified that Fat Daddy was Jackson and that Little Brian was Brian Goodson.

Q. Okay. At that time, was there anything else going on with Arthur?

A. He was upset. He was very upset. He got a circle mark in his hand with blood. I was checking him. I was asking him was he shot.

Q. And what did he say?

A. I asked him, "What happened? What's going on?" He said, "That he had got up -

*Id.* at 103-104.

At that point, Jackson's defense counsel objected on hearsay grounds. The prosecutor responded that Wilson had described Arthur's demeanor and testified that he was upset and vomiting and that Arthur was still under the distress and excitement of the situation. Jackson's defense counsel argued that it was not clear how much time had passed since the event that had given rise to the distress. The prosecutor further questioned Wilson:

Q. How much time had elapsed since Arthur came back into the house that you saw him in the bathroom vomiting?

A. He was at the door. Straight to the bathroom.

Q. If you had to guess, you know, within the minutes, hours?

A. Minutes, then seconds. He was from the door in the bathroom.

[Prosecutor]: Your Honor, I think that was immediately. It was an immediate reaction.

The Court: I'll overrule the objection. You can go ahead.

Q. What did Arthur say?

A. He said he had gotten up. He thought I was in the backroom letting the dog out. He seen (sic) a light under the door. He said he opened the door -

*Id*. at 105. Jackson's defense counsel renewed his objection and stated "the longer the narrative the less susceptible it is to being interpretive as an excited utterance." *Id*. The court responded "[w]ell I understand what you're saying," "[prosecutor], let's go ahead and - you can re-ask the question," and "[l]et's establish the amount of time that we're talking about, all right." *Id*. at 105-106.

[6]     The prosecutor resumed questioning Wilson:

Q. When he was vomiting, did you ask him a question?

A. I did.

Q. What was his response to your question?

A. I asked him what was going on. He said he opened the door and Fat Daddy and Little Brian was in the backroom, that Little Brian had an assault rifle, that he tried to shut the door, and Fat Daddy stuck his foot in the door and came out of his waistband with a gun, grabbed him by his dreads.

*Id*. at 106. When asked how she knew Goodson, Wilson testified: "That is also my cousin's son, my little cousin, his brother. Deshaun Jackson's brother." *Id*. at 107. The prosecutor continued questioning Wilson:

Q. Okay. And so after Arthur answered your question, what did you do next?

A.  I - he told me that someone shot - he said that he shot one of them.

Q.  Who is "he"?

A.  He told me that they were in the backroom, that [Jackson] had pulled the gun.  He was - they wrestled with the gun.  He got it away from him.  He shot.  It shot Brian and I went outside from there.

Q.  When you say "he shot Brian," do you mean Arthur?

A.  Arthur shot Brian.

Q.  Did you give permission for Deshaun Jackson or Brian Goodson to be at your home that day?

A.  No.

*Id.*

[7]     The State presented evidence that a projectile had been discovered on the floor of the laundry room, that a projectile and a buccal swab from Goodson were examined, and that a DNA profile of a swab taken from the projectile was "consistent with Brian Goodson" and "is estimated to occur once in more than eight trillion unrelated individuals." *Id*. at 183.  It also presented evidence that Goodson had arrived at the emergency room and reported a gunshot wound to his leg at about 9:20 or 9:30 a.m. on June 17, 2016, that Goodson had been dropped off at the hospital by a male driving a white vehicle, and Wilson had known Jackson to drive a light-colored Chevrolet Malibu.

The jury found Jackson guilty on both counts as charged, and the court sentenced him to consecutive terms of ten years on Count I and fifteen years.

## *Discussion*

### I.

The first issue is whether the trial court abused its discretion in admitting Wilson's testimony regarding the statements Arthur made to her. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Abney v. State*, 79 N.E.3d 942, 953 (Ind. Ct. App. 2017) (citing *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002)). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id*. (citing *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001)).

Jackson claims that "[h]earsay testimony was improperly admitted under the guise of the excited utterance exception" and that Wilson "was allowed to quote her son at length under the excited utterance exception." Appellant's Brief at 7-8. Jackson also asserts he was denied the opportunity to confront and cross-examine Arthur and that "even Arthur, in the dissertation that passed for an 'excited utterance,' offered no insight into how and why [Jackson] happened to be present in the Wilson residence." *Id*. at 8-9. The State responds that Jackson has failed to present a cogent argument and that Wilson's testimony was properly admitted as an excited utterance.

[11] Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is inadmissible unless admitted pursuant to a recognized exception. Ind. Evidence Rule 802. An excited utterance is such an exception and is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ind. Evidence Rule 803(2). For a hearsay statement to be admitted as an excited utterance, three elements must be shown: a startling event occurs; a statement is made by a declarant while under the stress of excitement caused by the event; and the statement relates to the event. *Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind. 1996).

[12] Application of this rule is not mechanical, and admissibility should generally be determined on a case-by-case basis. *Palacios v. State*, 926 N.E.2d 1026, 1031 (Ind. Ct. App. 2010). The heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. *Id.* (citing *Yamobi*, 672 N.E.2d at 1346). The statement must be trustworthy under the specific facts of the case at hand. *Id.* The focus is on whether the statement was made while the declarant was under the influence of the excitement engendered by the startling event. *Id.* "A declaration does not lack spontaneity simply because it was an answer to a question." *Yamobi*, 672 N.E.2d at 1346. "Whether given in response to a question or not, the statement must be unrehearsed and made while still under the stress of excitement from the startling event." *Id.* Also, the amount of time that has passed between the

startling event and the hearsay statement is one factor to be considered in determining admissibility as an excited utterance but the factor is not dispositive. *Id.* The central issue is whether the declarant was still under the stress of excitement caused by the startling event when the statement was made. *Id.*

[13] To the extent that Jackson does not present cogent argument that a startling event did not occur, that Arthur was not under the stress of excitement caused by the event, or that Arthur's statements to Wilson did not relate to the event, his claim is waived. *See Cooper v. State*, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (finding that Cooper's contention was not supported by cogent argument and was therefore waived).

[14] The record reveals that Arthur opened the door to the backroom, observed Jackson and Goodson and that Goodson was in possession of an assault rifle, and that, when Arthur attempted to shut the door, Jackson stuck his foot in the door, retrieved a gun from his waistband, and grabbed Arthur by his dreads. Arthur and Jackson wrestled with the gun, Arthur pulled the gun away from Jackson, Arthur fired the gun, and the bullet struck Goodson's leg. Following the encounter, Arthur went to the front door and then to the bathroom. Wilson testified that Arthur was very upset, that he was on his knees vomiting in the toilet, that he was spitting and gasping, and that he had a mark in his hand with blood. Wilson asked Arthur what occurred, and Arthur identified Jackson and described the struggle over the gun and how Goodson had been shot. When asked "[h]ow much time had elapsed since Arthur came back into the house

that you saw him in the bathroom vomiting," Wilson replied, "[h]e was at the door. Straight to the bathroom," and when asked to estimate the time, she answered "[m]inutes, then seconds. He was from the door in the bathroom." Transcript Volume II at 105. The record demonstrates that Arthur was under the stress of his violent encounter with Jackson and Goodson when he told Wilson what had happened. We cannot say that the trial court abused its discretion in admitting Wilson's testimony.[2]

## II.

[15] The next issue is whether there is sufficient evidence to sustain Jackson's convictions. We consider only the probative evidence and reasonable inferences supporting the verdicts, without reweighing the evidence or assessing witness credibility. *Jones v. State*, 87 N.E.3d 450, 454 (Ind. 2017). Unless no reasonable factfinder could find the defendant guilty, we affirm. *Id*.

[16] Jackson argues "[i]nsufficient evidence existed to support a conclusion that [he] conspired with anyone to commit burglary." Appellant's Brief at 9. He asserts: "There is nothing in the record to suggest a 'breaking and entering' by [him], or to suggest that he entered with the intent to commit a felony or a theft, or that

---

[2] To the extent Jackson argues on appeal that he was not afforded an opportunity to confront Arthur, we observe that Jackson did not object on Confrontation Clause grounds at trial and that a defendant may not raise one ground for objection at trial and argue a different ground on appeal. *See Small v. State*, 736 N.E.2d 742, 747 (Ind. 2000) (observing that the defendant objected at trial on grounds that testimony was inadmissible hearsay and did not object on Confrontation Clause grounds and that a defendant may not raise one ground for objection at trial and argue a different ground on appeal).

he conspired with anyone, or attempted, to commit a burglary." *Id*. at 9-10. He also argues that nothing was missing from the house and that "[t]he incident that culminated in the shooting of [Goodson] by Arthur may have begun as a social visit and gone awry." *Id*. at 10.

[17] The State argues that Jackson's actions of entering the exterior room of Wilson's residence and then forcing his foot into the interior door to push it open constitutes a breaking for the purposes of the statute. It also argues that "[a] reasonable jury could certainly infer that [Jackson] did not sneak into the house while armed with the intent to socialize—especially in light of the fact that he tried to force the door in, grabbed Arthur's hair, and pulled out his firearm." Appellee's Brief at 18-19.

[18] Ind. Code § 35-43-2-1 provides that a person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary as a level 5 felony. The statute further provides that the offense is a level two felony if it is committed while armed with a deadly weapon. Ind. Code § 35-43-2-1(3). "Using even the slightest force to gain unauthorized entry satisfies the breaking element of the crime." *Jenkins v. State*, 34 N.E.3d 258, 261 (Ind. Ct. App. 2015) (citing *Davis v. State*, 770 N.E.2d 319, 322 (Ind. 2002), *reh'g denied*), *trans. denied*. "For example, opening an unlocked door or pushing a door that is slightly ajar constitutes a breaking." *Id*.

[19] Ind. Code § 35-41-5-1(a) provides that a person attempts to commit a crime when, acting with the culpability required for commission of the crime, the

person engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same level or class as the crime attempted. Ind. Code § 35-41-5-1(a). A substantial step is any overt act beyond mere preparation and in furtherance of the intent to commit the offense. *Kiplinger v. State*, 922 N.E.2d 1261, 1266 (Ind. 2010); *Hughes v. State*, 600 N.E.2d 130, 131 (Ind. Ct. App. 1992). Whether a defendant has taken a substantial step toward the commission of the crime, so as to be guilty of attempt to commit that crime, is a question of fact to be decided by the jury based on the particular circumstances of the case. *Hughes*, 600 N.E.2d at 131.

[20] Ind. Code § 35-41-5-2(a) provides that a person conspires to commit a felony when, with intent to commit the felony, the person agrees with another person to commit the felony and that a conspiracy to commit a felony is a felony of the same level as the underlying felony. Ind. Code § 35-41-5-2(b) provides that the State must allege and prove that either the person or the person with whom he or she agreed performed an overt act in furtherance of the agreement. The State is not required to show an express formal agreement, and proof of the conspiracy may rest entirely on circumstantial evidence. *Fry v. State*, 748 N.E.2d 369, 374 (Ind. 2001).

[21] The State presented evidence that Jackson and Goodson entered Wilson's residence while Jackson was armed with a gun and Goodson was armed with an assault rifle and that, when Arthur saw them and attempted to shut the door, Jackson stuck his foot in the door, drew his gun from his waistband, and

grabbed Arthur by his hair. Arthur and Jackson wrestled with the gun, Arthur pulled the gun away from Jackson, and Arthur fired the gun, shooting Goodson in the leg. The State also presented DNA evidence and evidence of Goodson's hospital visit. Wilson had not given permission for Jackson and Goodson to enter her residence. Jackson does not argue on appeal that he was not the person who entered Wilson's house with Goodson, that he and Goodson were not armed, or that he did not draw his gun from his waistband and grab Arthur by the hair. A reasonable jury could infer from the evidence that Jackson and Goodman had agreed to burglarize Wilson's house and had engaged in conduct constituting a substantial step toward the commission of the offense. Based upon the record, we conclude that evidence of probative value was presented from which the jury could find beyond a reasonable doubt that Jackson committed the charged offenses.

## Conclusion

For the foregoing reasons, we affirm Jackson's convictions.

Affirmed.

Bailey, J., and Crone, J., concur.