

FILED

Feb 14 2019, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Thoma
Deputy Public Defender
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Darwin L.G. Hanks,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 14, 2019

Court of Appeals Case No.
18A-CR-2240

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D05-1712-F5-354

**Crone, Judge.**

## Case Summary

Darwin L.G. Hanks was convicted, following a jury trial, of committing level 5 felony battery and level 6 felony domestic battery against his six-year-old son. On appeal, Hanks contends that the evidence is insufficient to support his convictions. Specifically, he asserts that the State presented insufficient evidence to refute his defense of parental privilege to discipline his child. Finding the evidence sufficient, we affirm.

## Facts and Procedural History

On Tuesday November 28, 2017, when six-year-old D.H. arrived at school, his first-grade teacher immediately noticed "a huge, red, splotchy mark that covered most of his – the side of his face and kind of into his ear." Tr. Vol. 2 at 87. This "concerned [her] right away[,]" and she knew she needed to speak with D.H. *Id.* When she asked him how he got the mark on his face, he eventually told her that it happened "last night" and that his face "felt like fire." *Id* at 88. D.H.'s teacher contacted the school's case manager, who in turn notified the Allen County Department of Child Services ("DCS"). Shortly thereafter, DCS case manager Kim Jackson came to D.H.'s school to investigate. She observed that D.H. had "a reddish-purplish bruising to the side of his face extending from the edge of the left side of his mouth to his left ear and then underneath the ear, almost behind it." *Id.* at 135. She took pictures of D.H.'s face and then interviewed him. D.H. told her that his father thought that D.H. had taken his cigarettes. D.H. reported that "his father had slapped him" and "threw him on the couch." *Id.* at 137.

[3] Jackson went to D.H.'s home and spoke with D.H.'s parents, Hanks and Ailissa. Hanks admitted to Jackson that he hit D.H. Hanks said he was trying to teach D.H. that stealing and lying were wrong. He said he threatened to "whoop [D.H.'s] butt[,]" and when D.H. started to cry and scream, Hanks "hit him in the face." *Id.* at 138. Ailissa told Jackson that she witnessed Hanks hit D.H.

[4] D.H. was absent from school the next two days. The school contacted law enforcement to do a welfare check on D.H. When officers arrived at the home, Hanks answered the door, but D.H. was not there. Hanks told officers that he knew DCS was investigating him, and stated, "Because my son is a thief, he got smacked in the mouth." *Id.* at 99-100.

[5] D.H. returned to school that Friday, with the mark on his cheek still "very visible[,]" but "starting to fade." *Id.* at 93, 103. Then, on Monday, December 4, 2017, D.H.'s teacher observed "new marks" on his face that were "different than the mark on his face before." *Id.* at 94. One of the marks looked "more like a scratch" and was on the opposite side of his face. *Id.* When D.H.'s teacher asked him how his weekend was, he told her that "it was bad," and that "his dad had hit him three more times[.]" *Id.* D.H.'s teacher again had pictures taken, contacted the school's case manager, and made a report to DCS. Jackson returned to the school to observe the injuries and speak to D.H. D.H. told Jackson that his father had slapped him with an open hand because he had taken some of his parents' clothes and hid them in his bedroom. D.H. said that his father slapped his two-year-old brother B.H. as well. D.H. also told Jackson

that his mother gave him an ice pack for his face and told him not to tell anyone about the incident. Jackson contacted law enforcement and went to D.H.'s home. The children were removed from the home on December 5.

[6] Hanks was interviewed by police on December 6. He admitted that, on November 27, he "popped" D.H. in the mouth "a little too hard" which caused the large red mark on D.H.'s face. Tr. Vol. 3 at 18. Hanks stated that he popped B.H. in the face as well. Hanks denied that a second incident occurred or that he slapped D.H. and caused the injuries to the opposite side of his face. However, Hanks admitted to his mother, D.H.'s grandmother, that he had slapped D.H. because the six-year-old "got cocky back to him." Tr. Vol. 2 at 225.

[7] The State charged Hanks with level 5 felony battery and level 6 felony domestic battery. Following a trial, the jury found Hanks guilty as charged. The trial court sentenced Hanks to concurrent terms of four years for the level 5 felony and two years for the level 6 felony. This appeal ensued.

## Discussion and Decision

[8] Hanks does not dispute that the State presented sufficient evidence to satisfy the statutory elements of both battery and domestic battery.[1] Rather, he argues that

---

[1] The State alleged that Hanks, being at least eighteen years of age, knowingly or intentionally touched in a rude, insolent, or angry manner, D.H., a person less than fourteen years of age, resulting in bodily injury to D.H. *See* Ind. Code § 35-42-2-1(c)(1), -(e)(3). The State also alleged that Hanks, being at least eighteen years of age, knowingly or intentionally touched D.H., a family or household member, in the physical presence of

the State failed to refute his defense of parental privilege. Where, as here, a defendant alleges that the State failed to refute his claim of parental privilege, we apply the same standard of review as for any sufficiency of the evidence claim. *Willis v. State*, 888 N.E.2d 177, 182-83 (Ind. 2008). We consider only the probative evidence and reasonable inferences supporting the verdicts, without reweighing the evidence or assessing the credibility of the witnesses. *Jones v. State*, 87 N.E.3d 450, 454 (Ind. 2017). Unless no reasonable factfinder could find the defendant guilty, we will affirm the convictions. *Id.*

[9] Pursuant to Indiana Code Section 35-41-3-1, "[a] person is justified in engaging in conduct otherwise prohibited if he has legal authority to do so." Moreover, a parent has legal authority—sometimes referred to as the "parental discipline privilege"—to "apply such reasonable force" upon his child as the parent "reasonably believes to be necessary for ... proper control, training, or education." *Willis*, 888 N.E.2d at 182 (quotation marks omitted) (adopting the RESTATEMENT (SECOND) OF TORTS § 147 (1965)).

[10] When a defendant claims this privilege, "the State must disprove at least one element of the defense beyond a reasonable doubt." *Id.* Thus, "the State must prove that either: (1) the force the parent used was unreasonable or (2) the parent's belief that such force was necessary to control [the] child and prevent misconduct was unreasonable." *Id.* The State may refute the defense "by direct

a child less than sixteen years of age, knowing the child was present and might be able to see or hear the offense. *See* Ind. Code § 35-42-2-1.3(b)(2).

rebuttal or by relying upon the sufficiency of the evidence in its case-in-chief." *Id*. Ultimately, "[t]he decision of whether a claim of parental privilege has been disproved is entrusted to the fact-finder." *Id*.

[11] There "are no bright-line rules" as to what is considered "proper and reasonable parental discipline of children"; in fact, the current reasonableness standard makes it a difficult task to determine when parental use of physical force in disciplining children turns an otherwise law-abiding citizen into a criminal. *Carter v. State*, 67 N.E.3d 1041, 1049 (Ind. Ct. App. 2016) (Crone, J. concurring), *trans. denied* (2016). Nevertheless, our supreme court has directed that the following factors should be balanced against each other, giving appropriate weight as the circumstances dictate, in determining whether the force is reasonable:

> (a) whether the actor is a parent;
>
> (b) the age, sex, and physical and mental condition of the child;
>
> (c) the nature of his offense and his apparent motive;
>
> (d) the influence of his example upon other children of the same family or group;
>
> (e) whether the force or confinement is reasonably necessary and appropriate to compel obedience to a proper command;
>
> (f) whether it is disproportionate to the offense, unnecessarily degrading, or likely to cause serious or permanent harm.

*Id.* at 1045 (citing *Willis*, 888 N.E.2d at 181-82). This list of factors is non-exhaustive, and "'not all of the listed factors may be relevant or applicable in every case.'" *Willis*, 888 N.E. 2d at 182.

[12] A review of the relevant factors listed above supports the jury's decision to reject Hanks's parental privilege defense. Hanks struck his six-year-old son D.H. in the face on at least two occasions with sufficient force to leave marks that lasted for a number of days. The first injury covered almost one entire side of D.H.'s face, and, the day after that incident, his face still felt "like fire." Tr. Vol. 2 at 88. The injury to D.H.'s face after the second incident was still visible the following day despite his mother having him use an ice pack. Hanks inflicted this punishment because he believed that D.H. had a problem with stealing his parents' things and lying about it. While Hanks asserts that he was simply using progressive forms of discipline to try to correct a behavior problem, the evidence ultimately supports a conclusion that Hanks used an unreasonable and disproportionate amount of force when disciplining six-year-old D.H. for his misbehavior. Hanks's arguments on appeal are simply a request that we reweigh the evidence in his favor, a task not within our prerogative on appeal. The State presented sufficient evidence to refute the defense of parental privilege. As we are unable to conclude that no reasonable factfinder could find Hanks guilty, we affirm his convictions. *See Jones*, 87 N.E.3d at 454.

Affirmed.

Vaidik, C.J., concurs in result without opinion.

Mathias, J., concurs.